FILED
2021 Nov-12  AM 11:48
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA**

| | |
|---|---|
| HUNTER CREGER, individually and on behalf of all others similarly situated, *et al.* | Civil Action No.: |
| *Plaintiffs,* | |
| v. | |
| UNITED LAUNCH ALLIANCE, LLC; | |
| *Defendant.* | |

**AFFIDAVIT OF BENJAMIN JAMES EASTMAN**

I, Benjamin James Eastman, declare as follows:

1.  I am 28 years of age and I am a resident of Huntsville, Alabama.

2.  I am a mechanical tool design engineer at United Launch Alliance, and have been in that position since July, 2018.  I have regularly received positive performance reviews and was promoted to a Level 2 Engineer in October, 2021.

3.  As a mechanical engineer working in production tooling, my principal work consists of designing tools on a computer using 3-D Computer Aided Design software.  I work in a 4-person cubicle.  My desk faces two walls, and for the last 9 months my work station has been separated from my neighbor in my cubicle by a Plexiglas barrier.

4.  In the three and a half years I have worked at United Launch Alliance, I have only been required to travel on one occasion.  That was to evaluate tooling being developed by the subcontractor Ascent, which is no longer a possibility since all the major development tooling has been delivered. Tool Engineers have no need to access federal facilities.

5.  Even when not doing tools design work at the computer, my job functions can be performed over Web-Ex or skype, or while maintaining a six-foot distance from other employees on the rare occasion I actually need to be on the factory floor. This is clearly evidenced by the fact that our team has utilized employees and contractors working on tool design 100% remotely from other states.

6.  For the past year and a half since the COVID pandemic began, I have done my work as a tools engineer at ULA while working remotely regularly, or working with mask and social distance restrictions and submitting to temperature checks when working on-site.  I have also been tested for COVID on occasion, each time with negative results, and I could undertake regular COVID testing if necessary.

7.   On August 25, 2021, ULA's President and CEO, Tony Bruno, announced in an email to "All ULA Teammates" that "ULA will require the COVID vaccination as a condition of employment beginning Sept. 1, 2021."

8.   On September 1, 2021, ULA announced new policy CPS-086, which "requires all employees and contractors with badged, unescorted access to ULA facilities to be vaccinated against COVID-19 as part of its continued efforts to maintain a safe workplace."   A true and correct copy of Policy CPS-086 is attached hereto as Exhibit A.

9.   In its HR-527, ULA COVID Vaccination Process Instruction issued that same day, ULA announced that "Effective October 1, 2021, ULA will begin requiring all employees to be vaccinated against COVID-19 as a condition of employment."   A true and correct copy of HR-527 is attached hereto as Exhibit B.

10. The Instructions further provided that "Those employees or On-Site Contractors who are not already fully vaccinated will need to receive the first dose of the Pfizer or Moderna vaccine, or the single dose of the Johnson & Johnson vaccine, by October 29, 2021. They will need to receive the second dose of the Pfizer or Moderna vaccine by November 30, 2021."

11. On September 7, 2021, ULA's President and CEO, Tony Bruno, gave a video presentation in which he announced that ULA would be implementing a vaccine mandate but specifically informed ULA employees that they would be eligible for religious exemption based on sincerely-held religious beliefs and a medical exemption based on a positive serology test confirming the presence of antibodies from prior COVID infection, which he acknowledged provided protection at least comparable to that which is provided by the vaccines.   I received a link to that video presentation on September 22, 2021, by email.   A true and correct copy of that email is attached hereto as Exhibit C.

12. On September 21, 2021, I submitted a request for a religious accommodation from ULA's vaccine mandate.   A true and correct copy of that religious accommodation request is attached hereto as Exhibit D.

13. On October 7, 2021, I met with Constantine Wiggs, my HR contact, to discuss my request for religious exemption from the vaccine mandate.   She grilled me about my religious faith to determine whether my religious objection was sincerely held, but at no point did she discuss possible accommodations or engage in any interactive process or dialogue about possible accommodations.

14. ULA denied my request for religious accommodation on October 21, 2021, contending, among other things, that it had received too many religious accommodation requests to be able to accommodate.   ULA advised me that it would deem me to have "voluntarily resigned" if I did not receive the first dose (or, in the case of a single-dose vaccine, the only dose) of an approved Covid-19 vaccine by Friday, October 29, 2021.   A true and correct copy of ULA's denial of my religious accommodation request is attached hereto as Exhibit E.

15. On October 27, 2021, I filed an appeal of the denial of my religious accommodation request. A true and correct copy of my appeal is attached hereto as Exhibit F.

16. Instead of terminating me on October 29, 2021, ULA placed me on unpaid administrative leave effective close of business on that day, pending resolution of my appeal.

2

17. ULA denied my appeal on November 4, 2021, and advised me that I had "3 calendar days" to receive my "first (Moderna or Pfizer) or final (Johnson & Johnson) COVID 19 vaccination and provide [my] vaccination card to ULA Medical" or else be "separate[d] from ULA."  A true and correct copy of that notification is attached hereto as Exhibit G.

18. On November 5, 2021, I filed a renewed request for religious accommodation, noting (among other things) that because a much smaller number of ULA employees were still seeking exemption from the vaccine mandate, ULA's initial claim that it had received too many religious exemption requests to be able to accommodate them was no longer valid.  A true and correct copy of that notification is attached hereto as Exhibit H.

19. On November 8, 2021, ULA, through Constantina Wiggs, ULA HR Business Partner, informed me that the decision of the Appeals Board affirming the denial of my religious accommodation request was final.  I responded that I was not seeking a rehearing of the appeal, but had filed a renewed request for religious accommodation based on the fact that a significant number of people who had previously requested religious accommodations had either left ULA or succumbed to ULA's vaccine mandate, and that as a result ULA's reason for denying the initial request—that it had received too many to be able to accommodate—was no longer valid.  Ms. Wiggs responded as follows:  "Contrary to your suggestion, the circumstances underlying our undue burden determination have not changed significantly and there is no basis to reconsider the decision on your accommodation request, which remains final."  A true and correct copy of that email exchange is attached hereto as Exhibit I.

20. On November 8, 2021, Ms. Wiggs directed me to come to ULA's facility for an exit interview at 3:00 p.m.  During that interview, Ms. Wiggs asked me to sign an agreement acknowledging that I would not disclose ULA proprietary information to ULA competitors, but the top of the agreement indicated that I was voluntarily resigning from ULA.  Because that was not true, I crossed out that language and replaced it with "involuntarily."  Ms. Wiggs informed me that it did not matter, as "voluntary resignation" would be entered into the system no matter what I wrote, effective on Friday, November 12, 2021.  Copies of the exit documents are attached hereto as Exhibit J.

21. On November 10, 2021, I submitted a renewed request for religious exemption pursuant to new Alabama Law 2021-561, which took effect on November 4, 2021.  I also notified ULA that I intended to appeal the denial of my religious exemption request to the Alabama Department of Labor on the timetable specified in that statute.  A true and correct copy of that submission is attached hereto as Exhibit K.

22. I am a Roman Catholic, and my sincerely-held religious beliefs bar me from taking a vaccine that was manufactured and/or tested on cell lines derived from stem cells of aborted fetuses, as all of the currently available Covid-19 vaccines are.  Accordingly, and as I advised ULA, I cannot in good conscience comply with the vaccine mandate that has unilaterally been imposed by ULA as a condition on my employment.

23. On November 5, 2021, I filed with the Equal Employment Opportunity Commission a charge against ULA for religious discrimination on the basis of ULA's denial of my request for religious accommodation.  A true and correct copy of that EEOC charge is attached hereto as Exhibit L.

24. EEOC notified me that my initial interview would be held on February 18, 2022.  A true and correct copy of that notification is attached hereto as Exhibit M.

25. My wife is in her second trimester of pregnancy with our first child, so the loss of health insurance benefits will be particularly burdensome for me and my family.

26. My wife and I have been trying to purchase our first home, in preparation for the arrival of our baby next April.  Loss of employment will likely make it impossible for me to qualify for a mortgage.

27. Since ULA's mandatory vaccine policy was first announced in August, 2021, I have been trying to find other employment in my field, but have thus far been unsuccessful.

28. Without employment on regular income, my ability to provide for my family will be severely strained, preventing me from fulfilling another duty imposed upon me by my religious faith, namely, the duty to provide for my family, as specified in 1 Timothy, Chapter 5, verse 8:  "But if anyone does not provide for his relatives, and especially for members of his household, he has denied the faith and is worse than an unbeliever."

I declare under penalty of perjury that the foregoing is true and correct.

_____*11/10/21*_____          _____*Benjamin J Eastman*_____
Date                                                              Benjamin James Eastman

4

# EXHIBIT A

InsideULA                                    Newsfeed    OneDrive    Sites    Eastman, Benjamin J ⌄    ⚙    ?

**ULA**™    **Gateway**    Functions    Programs    Locations    Temporary    [Search this site    ⌄ 🔍]
CPS-086

Last modified at 9/2/2021 10:59 AM by ▪ Jamesson, Lisa

**Page Rating**
★☆☆☆☆ |3
**Categories**
No categories were selected

# CPS-086

Copyright © 2021 United Launch Alliance, LLC.  All Rights Reserved.



## CPS-086, COVID-19 Vaccination Policy

**Revision No: New**
**Effective:  01 Sept 2021**

Executive Policy Owner:  Quality, Safety and Mission Success Director

### 1  Policy Statement

ULA requires all employees and contractors with badged, unescorted access to ULA facilities to be vaccinated against COVID-19 as part of its continued efforts to maintain a safe workplace.

### 2  Requirements

- Centers for Disease Control and Prevention (CDC) guidelines
- Occupational Safety and Health Act
- Occupational Safety and Health Administration (OSHA) guidelines
- United States Government, including NASA, Department of Defense and Space Force guidelines and mandates for on-site contractors
- Executive orders applicable to government contractors
- State and local orders and guidelines

### 3  Responsibilities

This policy will be administered by the Director of Safety, Quality and Mission Success.

### 4  Related References

[HR- 527, ULA COVID Vaccination Process Instruction](#)

**Copyright © 2021 United Launch Alliance, LLC.  All Rights Reserved.**
*Current policies and procedures are on the United Launch Alliance Intranet.  Printed document may not be current.*

### 5  Revision History

| New Policy Initial release 9/1/2021 | | | |
|---|---|---|---|
| **PCR#** | | **Author/Lead** | |

**EXHIBIT B**

InsideULA                                              Newsfeed   OneDrive   Sites   Eastman, Benjamin J ⌄   ⚙   ❓



Gateway    Functions    Programs    Locations    Temporary          Search this site

# HR-527, ULA COVID Vaccination Process Instruction

Last modified at 9/2/2021 11:06 AM by ■ Jamesson, Lisa

Copyright © 2021 United Launch Alliance, LLC.  All Rights Reserved.

**Page Rating**

★☆☆☆☆ | 2

**Categories**
No categories were selected

## HR-527, ULA COVID Vaccination Process Instruction

## 1  Purpose

As part of our continued efforts to maintain a safe workplace, United Launch Alliance (ULA) has adopted a COVID-19 Vaccination Policy (the "Policy") to promote the health and well-being of its employees and contractors, their families, its customers and visitors, and the community. The Policy is intended to comply with all federal, state, and local laws. It is based upon guidance provided by the Centers for Disease Control and Prevention (CDC) and the Occupational Safety and Health Administration (OSHA), as well as mandates imposed by the Department of Defense and its military branches.

## 2  Process

### 2.1  Scope

The Policy applies to all employees regardless of work location, as well as contractors with badged, unescorted access to ULA facilities ("On-Site Contractors"). It does not apply to customers. Employees covered by a collective bargaining agreement will be governed by the applicable agreement as well as the Policy, with the agreement having precedence.

### 2.2  Vaccine Requirement

Effective October 1, 2021, ULA will begin requiring all employees to be vaccinated against COVID-19 as a condition of employment, and will require all On-Site Contractors to be vaccinated against COVID-19 as a condition of their admittance to ULA facilities. Acceptable vaccines are those that have received full approval or Emergency Use Authorization (EUA) from the federal Food and Drug Administration (FDA), which at this time includes the vaccinations manufactured by Pfizer, Moderna, and Johnson & Johnson.

Those employees or On-Site Contractors who are not already fully vaccinated will need to receive the first dose of the Pfizer or Moderna vaccine, or the single dose of the Johnson & Johnson vaccine, by October 29, 2021. They will need to receive the second dose of the Pfizer or Moderna vaccine by November 30, 2021. At this time booster shots are not required under the Policy, but this issue will continue to be evaluated as the situation develops and as additional guidance is received from the CDC and other applicable public health authorities.

Before the expiration of the applicable deadlines, all employees must complete one of the following requirements: (a) establish that they have received the vaccination by emailing a photograph or scanned copy of their vaccination card to ULA medical (ula.medical@ulalaunch.com) or (b) obtain an approved exemption as an accommodation. The process for ULA employees seeking an accommodation is explained below. Employees receiving the Pfizer or Moderna vaccine must provide a copy of their vaccination card for each of the two doses by the deadlines listed above. Employees who do not receive the vaccine or obtain an accommodation by the stated deadlines will be deemed to have voluntarily resigned their position.

Applicants for employment with ULA will be notified that compliance with the Policy is a condition of employment at ULA, subject to applicable laws regarding reasonable accommodations for medical conditions/disabilities and sincerely held religious beliefs. Absent an exemption, applicants who have accepted an offer of employment with ULA may not begin the onboarding process until they provide documentation, in such form as may be requested by ULA, that they have received the first dose of the Pfizer or Moderna vaccine, or the single dose of the Johnson & Johnson vaccine. Any new employee who has received only the first shot of the Pfizer or Moderna vaccine will be required to receive the second dose within 30 days of starting employment.

COVID-19 vaccines are free and are now widely available. Vaccine locations can be found at https://www.vaccines.gov/search. Employees may be eligible to take paid or unpaid time off for absences related to receiving the vaccination or if they are unable to work due to an adverse reaction to the vaccine.

### 2.2  Requests for Exemptions as Accommodations

To assist any employee who cannot receive the vaccine due to a qualifying medical condition, or who objects to being vaccinated on the basis of a sincerely held religious belief, ULA will engage in an interactive process to determine if a reasonable accommodation can be provided. An accommodation is not required if it would create an undue hardship on ULA or pose a direct threat to the health or safety of the employee or to others in the workplace.

To request an accommodation for a medical reason, complete and submit form HR-527B, HR-527C(see below for link) to ULA Medical at ula.medical@ulalaunch.com. Medical information gathered in connection with a request for accommodation will be kept confidential pursuant to HR-126. Questions relating to medical exemptions should be directed to ULA Medical at (866) 520-1268.

To request an accommodation based on a sincerely held religious belief, complete and submit form HR-527A (see below for link) to your Human Resources Business Partner. Questions relating to religious exemptions should be directed to your Human Resources Business Partner.

To allow time for processing in advance of the vaccination deadline, employees must submit their accommodation request forms by October 1, 2021. Requests for exemption will be considered pursuant to ULA's Reasonable Accommodation Policy, HR-126. ULA may request additional information or documentation it deems necessary or appropriate to inform its decision on an accommodation request. After review, employees will be notified of the decision regarding their requested exemption. If an employee is granted an exemption, they will be required to undergo regular FDA approved COVID-19 testing in addition to observing all other ULA-mandated COVID-19 health and safety protocols.

ULA expects employees to cooperate as ULA evaluates accommodation requests, including but not limited to providing true and accurate information in furtherance of accommodation requests. ULA also expects compliance with the United Launch Alliance Code of Conduct. If ULA determines that employees have failed to cooperate with its reasonable information request or to have acted dishonestly in advancing such requests or otherwise in violation of the Code of Conduct, it may deny the accommodation request and, if appropriate, take disciplinary action including potentially terminating an employee's employment.

On-Site Contractors should refer to their employer regarding their accommodation process but will be required to follow any safety precautions imposed by ULA for non-vaccinated individuals working at ULA facilities.

## 3 Roles

3.1   ULA Medical

Receive requests for accommodation for medical reasons and receive and maintain medical records in support of such requests. Work with Accommodation Committee to evaluate and determine whether exemption to vaccine mandate for medical reasons will be granted and what conditions will apply.

3.2   Human Resources Business Partner

Receive requests for accommodation for religious reasons and work with Accommodation Committee to evaluate and determine whether exemption to vaccine mandate for medical or religious reasons will be granted and what conditions will apply.

3.3   Safety

Work with Accommodation Committee to evaluate what conditions will be applied when medical or religious accommodations are granted.

## 4 References

CPS-086 ULA COVID Vaccination Policy

## 5 Attachments

Form HR-527A ULA COVID-19 Religious Accommodation Request Form
Form HR-527B ULA COVID-19 Vaccine Accommodation Form (NOT CALIF)
Form HR-527C ULA COVID-19 Vaccine Accommodation Form (CALIF)

# EXHIBIT C

**From:** GRP Leadership Communications <leadership_communications@ulalaunch.com>
**Sent:** Wednesday, September 22, 2021 08:01
**Subject:** COVID Vaccine Video and Presentation You May Share with Family and Friends



**September 22, 2021**

**To:**          **All ULA Teammates**

**From:**      **Tory Bruno, President and CEO**

**Subject:**      **COVID Vaccine Video and Presentation You May Share with Family and Friends**

Several of you have asked if you can share information we released Sept. 7 with friends and family.

We have created versions of the presentation and video you may share under the following rules:

- You may share this for conversational and informational purposes with people you know.

- You may not share to social media, with reporters/media or with the purpose of publicity.

Please note:

- The data I shared was current when we released the video. While specific metrics have changed, the overall trends continue to hold.
- We are assessing the impact of White House and Department of Defense guidance announced after we released this video. However, we do not plan to change the Oct. 1 effective date of our vaccination policy or the implementation timeline.

The presentation is attached. Here's how to share the video:

- Visit or share the following link: https://vimeo.com/610833196

- Enter the following password when prompted: ulashare

Thank you for your thoughtful questions and consideration as we work toward Oct. 1, when the vaccine policy takes effect.

If your conversations with friends and family generate questions, please talk with your leader, a member of the senior leadership team or your HR business partner.

---

This message is intended only for the use of the intended recipient. If you are not an intended recipient, you are hereby notified that any use, dissemination, disclosure or copying of this communication is strictly prohibited. If you have received this communication in error please destroy all copies of this message and its attachments and notify the sender immediately.



# TOWN HALL

**09.07.21**

# WHY ARE WE NOW REQUIRING VACCINES?

**Case Rates Are
High & Increasing**

Increased **Risk to Teammates**
Who Can't Be Vaccinated

We Will Not Be Able to Execute
the **Manifest**



# WHY ARE WE NOW REQUIRING VACCINES?
## MANIFEST IS DENSE & CHALLENGING



# ARE OTHER COMPANIES REQUIRING VACCINES?
## YES, FOR EXAMPLE:

**Delta Air Lines** new hires

Michelin-starred New York City restaurant **Eleven Madison Park**

The Broadway production of **Hamilton**

**Houston Methodist Hospital** network

**Lastique International Corp.**, raw plastics in Louisville, Kentucky

New York City department store **Saks**

**Sunrise Senior Living, Enlivant, and IntegraCare**

**Facebook** employees at U.S. campuses

U.S.-based **Google** employees

Employees of **The Washington Post**

New York City-based **Morgan Stanley** employees

**CNN** employees

Chicago-based **Fifty/50 Restaurant Group**

**Le Bernardin**, a Michelin-starred New York City restaurant

**Twitter**

Asset manager **BlackRock**

All office-based employees of **Lyft**

Private healthcare network **Ascension Health**

Cast and crew of U.S. **Netflix** productions

**San Francisco** city employees

All U.S.-based employees of **United Airlines**

**Cardinal Health**

**Capital One** employees who wish to return to its offices

Private healthcare network **Ascension Health**

Cast and crew of U.S. **Netflix** productions

**Durst Corporation**, is requiring vaccines or termination

Corporate & management-level staff of **Walmart**

**Norwegian Cruise Lines** crew

Employees & crew members at all U.S.-based **Walt Disney parks**

In September, **Microsoft** will require vaccinated employees, vendors, and visitors to its U.S. offices

Office-based **Uber** employees

**Jefferies Group** will only allow vaccinated employees in offices

Food provider **Tyson** will begin a phased mandate Oct 1

Tech-real estate company **Redfin**

**Politico** employees

All employees of **long-term care facilities in Massachusetts**

U.S.-based contractors & employees of **Pfizer**

**Virginia** state employees vaccinated or weekly Covid testing

**Hawaii Airlines**

U.S.-based **Hess** offshore workers

**Northwestern Mutual** employees & contractors in offices

**California health care and long-term care workers** and **teachers** must be vaccinated or submit to weekly COVID-19 tests

Corporate office employees of **Walgreens**

**Salesforce**

New York City-based members & employees of **Equinox** fitness

**DoorDash** corporate employees

**Cisco**

**Anthem** health insurance company

**Frontier Airlines** employees beginning October 1

U.S.-based **Ford** employees that travel overseas

Employees & contractors of **Gilead Sciences** beginning Oct 1

**Amtrak** employees beginning Nov 1

Access to the **New York Stock Exchange** trading floor

**McDonald's** corporate staff beginning Sept 27

**Virginia, Oregon, New Jersey & New York City public schools**

**MGM Resorts** employees

**Los Angeles** city workers, including police officers & firefighters

All **U.S. military** service members

**Chevron** employees travelling internationally & Americans overseas

Corporate & patient-facing **CVS** employees

**Envision Healthcare**, a nationwide medical group

Corporate employees of **UPS**

**Goldman Sachs** employees, visitors & clients for U.S. offices

**Johnson & Johnson**

**Deloitte**



The **Delta** Variant is **More Infectious** and Has Out Competed the Original Alpha

# WHY CASES ARE UP?



# IS THE VACCINE EFFECTIVE?
## YES, 94% EFFECTIVE (CDC)

- Effectivity vs Efficacy vs Chances of Getting COVID...



**Unvaccinated** People are **100X more Likely to Die** From COVID than **Vaccinated**

# IS THE VACCINE EFFECTIVE AGAINST DELTA?
## YES

- Vaccine mRNA Action vs Traditional Vaccines
- CD4+T "**Hunter**" Cells and the Coronavirus Protein **Spike Cue**
- CD8+T "Killer" Cells
- **Delta** Variant Retains the **Spike**





# IS THE VACCINE SAFE?

## YES

- Pfizer has **Full FDA Approval**, Others on Track as Well
  - >43,000 in Phase 3 Trials

- Most Surveilled Vaccine in History
  - >**170 Million** Fully Vaccinated in the USA
  - >**5 Billion** Doses Across the World

**Total doses administered**



5.13 billion

Aug. 26

The New York Times

5 billion
4
3
2
1
Dec. 2

# ARE THERE BREAKTHROUGH CASES?
## YES

Percent of Fully Vaccinated Individuals That Have Experienced a COVID-19 Breakthrough Event

Events include COVID-19 diagnoses, hospitalizations, and deaths.



- **>99%** of **new cases** are amongst the **Unvaccinated**
- **>>99%** of current **hospitalizations** are **Unvaccinated**
- Nearly **100%** of new **Deaths** are **Unvaccinated**

**Causes**
Poor Vaccine Handling, Shot Administration, Individual Weak Immune Response to Shots

## Less Than 1% Breakthrough

# DOES CDC TRACK BREAKTHROUGH CASES?
## YES

**As of April 2021** CDC Considers Only Severe Cases to be Significant and Tracks Only These

Hospitalized or fatal COVID-19 vaccine breakthrough cases reported to CDC as of August 23, 2021



As of August 23, 2021 more than 171 million people in the United States had been fully vaccinated against COVID-19.

During the same time, CDC received reports from 49 U.S. states and territories of 11,050 patients with COVID-19 vaccine breakthrough infection who were hospitalized or died.



0.0065

**0.007% Breakthroughs Have Serious Outcomes**

# CAN'T I JUST USE A "HORSE ANTIBIOTIC" IF I CATCH COVID?
# NO!

- This is an Internet **Myth**
- The **Livestock Wormer** Being Used in Alabama, Florida, and Mississippi is **Poisonous** to Humans
- Origin of the Myth:
  - The Wormer Contains **Ivermectin**, Along with Other Ingredients
  - Ivermectin is Used to Treat Some **Tropical Diseases in Humans**
  - 3 Hospital **Studies** Published Using a Cocktail of Drugs on COVID Patients that Included Ivermectin
    - 1 Showed Slight **Improvement**
    - 1 Showed **No Difference**
    - 1 Showed **Harm**
    - All Administered **Other Drugs at the Same Time**
- Another Lab Study Showed that **100X Safe Human Dose** of Ivermectin Slowed Coronavirus Growth
- NIH Recommends Continued Study
- **FDA** and **Poison Control** Warn Against Self Medicating with the "Ivermectin" Livestock Wormer

# ISN'T COVID REALLY JUST LIKE GETTING THE FLU?

## NO

- COVID has Infected **38 Million** and Killed Over **637,000** Americans, so far…

- "Long COVID" Can leave Lingering, Significant Health Effects



COVID is a **Terrible**, **Painful** and **Solitary** Death by **Slow Suffocation**

# IF I GET SICK AND SURVIVE COVID ARE THERE OTHER RISKS?

## YES

About 10% of COVID patients will become Long Haulers

*The Journal of the American Medical Association*

"Long Haulers" have a condition called "long COVID." There are risks of long term, dangerous, and possibly permanent effects:

- Pulmonary – chronic shortness of breath

- Cardiac – palpitations, dizziness, chest pain

- Neurological – neuropsychiatric issues, including fatigue, "fuzzy brain," or confusion

# WHAT IS A PCR VS ANTIGEN TEST?



Hemagglutinin esterase (He)

Membrane protein (M)

Envelope protein (E)

Nucleocapsid protein (N) and RNA

PCR

Spike glycoprotein (S)

Antigen

Lipid bilayer membrane

**Molecular** (RT-PCR: Reverse Transcription Polymerase Chain Reaction)

- Virus **RNA** is Transcribed into **DNA** via Enzyme
- DNA is **"Amplified"** (Replicated to Measurable Quantity via Thermal Cycling)
- DNA is **Analyzed** for Match to Corona (COVID) Virus
- Detects **Current or Recent** Infection, **Most Accurate & Sensitive**

**Antigen**

- Protein from COVID Virus **Spikes** are to **Artificial Antibodies**
- Antibodies to Bind Proteins and **Stain** a Paper Strip
- Detects **Current or Recent** Infection, **Less Accurate** than PCR, but Faster & Cheaper

# HOW ACCURATE IS TESTING?



Hemagglutinin esterase (He)

Membrane protein (M)

Envelope protein (E)

PCR: PPV=98%, NPV=80%
Antigen: PPV=33%-94%, NPV=96%

Nucleocapsid protein (N) and RNA

PCR
2% False Negative
20% False Positive

Spike glycoprotein (S)

Antigen
67% (asy) to 6% False Negative
4% False Positive

Lipid bilayer membrane

# WHY ARE WE REQUIRING A SECOND TEST FOR SUSPECTED BREAKTHROUGHS?

**Because the Test Error Rates (20%) Are Large Compared to the Breakthrough Rate (<1%)**

- Bayes Theorem



# WHAT IS AN ANTIBODY/SEROLOGY TEST?



**Antibody (Serology)**

- Identifies COVID **Antibodies** in the **Blood**, Indicating **Past Infection**

- **Remains** Positive **Long After Infection**

# CAN I SUBSTITUTE AN ANTIBODY TEST FOR VACCINATION?
## MAYBE

- Latest Research Indicates COVID **Antibodies Persist** for at Least **8 Months**
  - Evidence of Similar Levels of **Protection**

- ULA Employees May **Apply for a Medical Exemption** (as well as for Sincere Religious Beliefs)
  - Includes Recent **Positive Serology** Test & **Medical Caregiver's** Form

- ULA Will Monitor the On-Going Research, Vaccination Could be Required for Those Granted an Exemption in the Future

- \***CDC** Continues to **Recommend Vaccination**
  - One or Two Doses of Vaccine Provide Additional Protection





**THANK YOU**

**EXHIBIT D**



## COVID-19 RELIGIOUS ACCOMMODATION REQUEST FORM

**Policy Statement & Instructions:**

Consistent with federal, state and local law, United Launch Alliance ("ULA") provides reasonable accommodation for employees' sincerely held religious beliefs, practices, and observances unless providing a reasonable accommodation would result in undue hardship to ULA. If you are seeking an accommodation from the ULA's COVID-19 Vaccination Policy (the "Policy") due to religious reasons, please complete this form and return it to your Human Resources Business Partner.

We request that you complete this form because, in some cases, a person's religious beliefs may be more subjective than objective. If your religious accommodation is not required by the tenets of a specific religion, ULA will need to understand the basis and source of your religious beliefs to reasonably assess whether your request qualifies for a religious accommodation. This is the reason for many of the questions below. The information you provide will allow us to evaluate your request and decide whether we can grant an accommodation in this instance. It is possible that more information will be necessary to evaluate your request, and if so, we will follow up with you for more information. Requests will be processed pursuant to ULA's Reasonable Accommodation Policy, HR-126, and we will inform you once a decision is made on your request.

***Company Expectations for Cooperation and Honesty:***

*As COVID-19 continues to significantly challenge our employees, customers and business, it is more important than ever to work cooperatively with one another. ULA respects employee religious and personal beliefs but also expects employees to cooperate as ULA evaluates accommodation requests, including but not limited to providing true and accurate information in furtherance of accommodation requests. ULA also expects compliance with the United Launch Alliance Code of Conduct. If ULA determines employees have failed to cooperate with its reasonable information requests or employees have acted dishonestly in advancing such requests, it may deny the accommodation request and, if appropriate, take disciplinary action including potentially terminating an employee's employment.*

Employee Name:    Benjamin Eastman

Position:    Tool   Engineer

Supervisor:   Mark Hart

1. Please describe in detail the provision(s) of ULA's COVID-19 Vaccination Policy from which you are seeking accommodation and the accommodation you are requesting.

   My Answers were too long to fit on the lines given, so I have added a page at the end of this of this form that lists all of the answers to the questions.

2. Please identify the religious belief, practice, or observance that is causing you to seek the accommodation identified in response to Question No. 1.

Form HR-527A Rev New (01 September 2021)
Copyright© 2021 United Launch Alliance, LLC as an unpublished work. All rights reserved

3.  Please describe the conflict between such religious belief, practice, or observance and the provision(s) of the COVID-19 Vaccination Policy identified in response to Question No. 1.

_____

_____

_____

4.  Is the religious belief, practice, or observance you identified in response to Question No. 2 based on an organized religious faith to which you belong, and if so, please describe?

_____

_____

_____

5.  If your request for accommodation is not based on an organized religious faith to which you belong, please describe the basis for the religious belief, practice, or observance you have identified in response to Question No. 2.

_____

_____

_____

6.  Have you received other vaccinations previously?  If so, please describe why the religious belief, practice, or observance you have identified did not prevent you from getting that vaccination(s).

_____

_____

_____

7.  Would receiving a COVID-19 vaccine interfere with your ability to practice your religion?  If so, please explain.

_____

_____

_____

8.  Please describe how the religious belief, practice, or observance you have identified in response to Question No. 2 effects other aspects of your life, such as if it prevents you from receiving certain medical care. (Please do **not** share any medical information, including without limitation

1. Please describe in detail the provision(s) of ULA's COVID-19 Vaccination Policy from which you are seeking accommodation and the accommodation you are requesting.

I am seeking an exemption from the Mandatory vaccine requirement due to the conflict it has with my religious beliefs as a Catholic.

2. Please identify the religious belief, practice, or observance that is causing you to seek the accommodation identified in response to Question No. 1.

Core to my religious beliefs is the knowledge that life begins at conception, and that the murder of innocent human life is unjust. As a Christian, I oppose the trafficking and commodification of human beings at all stages of life, born and pre-born. I cannot, in good conscience, participate or accept practices that perpetuate and encourage the relationship between abortion and science, no matter when that connection was initiated or how long a practice has been accepted by society.

3. Please describe the conflict between such religious belief, practice, or observance and the provision(s) of the COVID-19 Vaccination Policy identified in response to Question No. 1.

All of the COVID-19 vaccine products that have received either Full Approval or Emergency Use Authorization (EUA) by the FDA in the United States were produced using aborted fetal cell lines, tested using aborted fetal cell lines, or both.

Moreover, decisions regarding vaccination must be determined by the individual and the family, not by the jurisdiction of the State or any other authority, according to biblical mandate (Romans 13:1). I have a right to uphold my own bodily integrity and moral conscience and a right to refuse medical treatment. All humans also have a right not to be trafficked, commodified, and/or experimented on without their consent—born and pre-born—and I refuse to participate in acts that permit these violations to continue.

4. Is the religious belief, practice, or observance you identified in response to Question No. 2 based on an organized religious faith to which you belong, and if so, please describe?

Yes, based on my beliefs as a Catholic and the conscience that has been formed by the Church's authority, I am morally opposed to receiving a vaccine that has been produced with or tested on aborted children.

Even if other Catholics, or indeed the Church leadership itself, do not take such a belief, according to the Supreme Court Case Thomas v. Review Board of the Indiana Employment Security Division, 450 U.S. 707, the guarantee of free exercise of my religious belief is not limited to beliefs which are shared by all the members of a religious sect.

5. If your request for accommodation is not based on an organized religious faith to which you belong, please describe the basis for the religious belief, practice, or observance you have identified in response to Question No. 2.

N/A

6. Have you received other vaccinations previously? If so, please describe why the religious belief, practice, or observance you have identified did not prevent you from getting that vaccination(s).

I have received several as a child, and have no way of knowing if those were tied to abortion. To my knowledge, no vaccine that I have received as an adult has been derived from or tested on aborted fetal cell lines.

7. Would receiving a COVID-19 vaccine interfere with your ability to practice your religion? If so, please explain.

Yes.
"The Divine Law," says Cardinal Gousset, "is the supreme rule of actions; our thoughts, desires, words, acts, all that man is, is subject to the domain of the law of God; and this law is the rule of our conduct by means of our conscience. Hence it is never lawful to go against our conscience; as the Fourth Lateran council says, 'Quidquid fit contra conscientiam, aedificat ad gehennam.'" ["Whatever is done in opposition to conscience is conducive to damnation."]

8. Please describe how the religious belief, practice, or observance you have identified in response to Question No. 2 effects other aspects of your life, such as if it prevents you from receiving certain medical care.

As a Catholic, I am not allowed to use Contraceptives of any form, because they might cause the inadvertent abortion of a child, and also because they frustrate the purpose of the marital act to participate in the creation of human life. I also am required to abstain from any medical treatment that causes harm or death of another individual or myself. An example of such would be the participation or encouragement of Abortion, Euthanasia, or any medication, vaccine, or food product that has been derived from or tested on aborted fetal cell lines.

9. Is there anything else you would like the company to know about your request for accommodation? If so, please provide that information here or attach any documents you wish to provide.

I am disheartened that ULA would force me into a position where I have to choose between following my conscience and providing for my family. I pray that our company's leadership will understand the gravity of what they are asking and undo this mandate.



any diagnosis or treatment information.)

_____

_____

_____

9.  Is there anything else you would like the company to know about your request for accommodation?  If so, please provide that information here or attach any documents you wish to provide.

_____

_____

_____

**Employee Acknowledgment:**  I acknowledge that I have read and understand this request form and that all statements made above are complete and accurate to the best of my knowledge.  I understand that any intentional misrepresentation contained in this request may result in disciplinary action.  I understand that the accommodation requested above may not be granted if I have not identified a religious belief, practice, or observance that conflicts with the COVID-19 Vaccination Policy or if the accommodation is not reasonable or imposes an undue hardship.

Date:  _____          Signature:     _____

                                                                     Name:          _____

Copyright© 2021 United Launch Alliance, LLC as an unpublished work. All rights reserved

**EXHIBIT E**

# REASONABLE ACCOMMODATION DECISION FORM
COVID-19 Vaccine Policy



| Reasonable Accommodation Decision Form | | | | |
|---|---|---|---|---|
| The chair of the Accommodation Committee must complete this form and submit copies of all information reviewed, considered and / or gathered in making a decision to the Talent Management Department within five days of completion. | | | | |

| Chair Person's Name: Tina Wiggs | | Phone Number: 256-432-1109 | | |
|---|---|---|---|---|
| Position Title: HRBP | | E-mail: constantina.s.wiggs@ulalaunch.com | | |
| Site: Decatur | | | | |

List the names of the Accommodation Committee members consulted in this case, including the employee:

| Name | Site | Function | Phone Number | E-mail |
|---|---|---|---|---|
| Gillian Dale | Denver | Legal | 303-269-5876 | gillian.dale@ulalaunch.com |
| Amy Logsdon | CCSFS | HR | 321-730-5632 | amy.logsdon@ulalaunch.com |
| Lourie Bradley | Decatur | HR | 256-432-1956 | lourie.a.bradley@ulalaunch.com |
| Jennifer Morgan | Decatur | HR | 256-432-1955 | jennifer.l.morgan@ulalaunch.com |
| Janet Williams | Denver | HR | 303-269-5961 | janet.m.williams@ulalaunch.com |
| Noelia Gutierrez | Harlingen | HR | 956-430-7835 | noelia.gutierrez@ulalaunch.com |
| Mary Ann Milton | Denver | HR | 303-269-5548 | maryann.milton@ulalaunch.com |
| Jose Duenas | VSFB | HR | 805-606-3585 | jose.g.duenas@ulalaunch.com |
| Kia Silverman | Denver | HR | 303-269-6456 | kia.silverman@ulalaunch.com |
| Linda Wyman | CCSFS | HR | 321-730-0495 | linda.m.wyman@ulalaunch.com |

**Answer the following questions:**

Name of the person requesting the reasonable accommodation: Eastman, Ben

Site and name of business group of requestor: Decatur

Job title of the requestor: Tooling Engineer

Name of leader of requestor: Hart, Mark

Describe the accommodation requested and the reason for the request:
Exemption from the COVID-19 vaccination mandate for religious reasons

If accommodation is approved, describe the accommodation granted and the reason for approval:

If accommodation is granted, describe any conditions on approval:

If accommodation is denied, provide the reason for denial:
This request is being denied because the accommodation would result in an undue hardship to ULA. Factors that contribute to the undue hardship include, but are not limited to: the high volume of requests to accommodate that qualified under the sincerely held belief prong of the analysis; the need to ensure a healthy and safe workplace; the time, cost, and administration burden associated with weekly testing; potential issues with the availability of testing; ULA's requirements as a federal government contractor, including NRO requirements to staff contracts with vaccinated workers; the need to comply with strict contract requirements, including launch schedules, and the potential financial risks of failure to satisfy such requirements; the nature of our workplace and business, including the need for on-site work; the need for employees to interact with others, travel, and access customer facilities, including federal facilities with strict access requirements; the number of prior COVID cases and quarantines at ULA, including multiple

HR-126.B New (20 October 2021)
Copyright © 2017 United Launch Alliance, LLC as an unpublished work. All rights reserved.

# REASONABLE ACCOMMODATION DECISION FORM



hospitalizations and deaths; and the presence of continued active COVID-19 cases and quarantines at ULA despite prior safety measures.

Date requestor was notified of decision:  10/21/2021

| | | |
|---|---|---|
| _Tina S. Wiggs_ | HRBP | 10/21/2021 |
| Signature | Title | Date |

Reasonable accommodation approvals to the COVID-19 vaccine policy are **provisional** and not considered permanent. Employees with an approved accommodation will be required to complete regular COVID-19 testing, in lieu of receiving the vaccine.  Testing will be done weekly, at minimum, and customer requirements may require more frequent testing in some situations, which may apply to the employee.  Failure to comply with the testing requirements will result in revocation of the accommodation.

Approvals may be reassessed and/or revoked by ULA at any time.  Reasons that may result in discontinuing the accommodation include, but are not limited to: ULA determines it is an undue hardship to continue the accommodation, customer requirements change, there is a change in the employee's job, a new vaccine is developed that does not conflict with the employee's sincerely held religious beliefs, or the approval was based on untruthful or inaccurate information provided by the employee.  ULA will re-engage the employee in the interactive process prior to reassessing or revoking the approved accommodation.

HR-126.B New (20 October 2021)
Copyright © 2017 United Launch Alliance, LLC as an unpublished work.  All rights reserved.

# EXHIBIT F

| | |
|---|---|
| **From:** | Eastman, Benjamin J |
| **To:** | Wiggs, Constantina S |
| **Subject:** | RE: Accommodation Decision |
| **Date:** | Wednesday, October 27, 2021 10:07:22 AM |
| **Importance:** | High |

**Sensitive Internal Information**

Good morning Ms. Wiggs,

I am formally appealing this decision, as outlined in HR-126.

My position is able to be done Virtually, as evidenced by the fact that I worked remotely 100% of the time for over a month in 2020, and then continued working half virtual, half in the office for an additional 6 months in 2020.

Per Title VII of the Civil Rights Act,
"It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

Furthermore, "high volume of requests" is not a justifiable reason to terminate my employment, since I could easily be accommodated by letting me work virtually. Additionally, in my conversation with you on October 7, I asked if the company had received more accommodation requests than could be handled. You replied that there were more than expected, but not so many that could be accommodated, and that every person's request would be judged on their individual merits. This has clearly not been the case, which leads me to believe that ULA has not been engaging with me in good faith.

This policy is wrong, the judgement that the company has reached is wrong, and the process has been flawed from the start.

Thank you for your time and consideration in this matter.

Very Respectfully,

**Benjamin Eastman**
Tool Engineer
United Launch Alliance, LLC
1001 Red Hat Road
Decatur, AL 35601
**Office - 256-432-1722**

**From:** Wiggs, Constantina S <Constantina.S.Wiggs@ulalaunch.com>
**Sent:** Thursday, October 21, 2021 16:30
**To:** Eastman, Benjamin J <Benjamin.J.Eastman@ulalaunch.com>
**Subject:** Accommodation Decision

**Sensitive Internal Information**

In response to your request for a religious accommodation to ULA's vaccine policy, please see the attached decision.

Tina Wiggs

HR Business Partner
United Launch Alliance l [www.ulalaunch.com](http://www.ulalaunch.com)
256-432-1109 Office
256-560-1007 Cell



---

This message is intended only for the use of the intended recipient. If you are not an intended recipient, you are hereby notified that any use, dissemination, disclosure or copying of this communication is strictly prohibited. If you have received this communication in error please destroy all copies of this message and its attachments and notify the sender immediately.

# EXHIBIT G

# RELIGIOUS ACCOMMODATION APPEAL FORM
COVID-19 Vaccine Policy



| Religious Accommodation Appeal Form | | | | |
|---|---|---|---|---|
| The chair of the Appeal Board must complete this form and submit it to the Talent Management Department. | | | | |
| Chair Person's Name:  Liane George (Appeal Board Chair) | | | Phone Number: (720) 922-7063 | |
| Position Title:  Vice President, Human Resources | | | E-mail: liane.j.george@ulalaunch.com | |
| Site:  Denver | | | | |
| List the names of the Appeal Board members consulted in this case: | | | | |

| Name | Site | Function | Phone Number | E-mail |
|---|---|---|---|---|
| Cynthia Pfeifer | Denver | HR | (303) 391-4890 | cynthia.a.pfeifer@ulalaunch.com |
| Sondra Barbour | Denver | Legal | (720) 922-7138 | sondra.k.barbour@ulalaunch.com |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**Answer the following questions:**

Name of the person requesting the reasonable accommodation:  Benjamin J Eastman

Site and name of business group of requestor:  Decatur, Mechanical Engineering

Job title of the requestor:  Mechanical Engineer

Name of leader of requestor: Mark Hart

Describe the accommodation requested and the reason for the request:
Appeal to a denied request for exemption from the COVID-19 vaccination mandate for religious reasons

If accommodation is approved, describe the accommodation granted and the reason for approval:

If accommodation is granted, describe any conditions on approval:

If accommodation is denied, provide the reason for denial:

**Original Decision:**

*This request is being denied because the accommodation would result in an undue hardship to ULA. Factors that contribute to the undue hardship include, but are not limited to: the high volume of requests to accommodate that qualified under the sincerely held belief prong of the analysis; the need to ensure a healthy and safe workplace; the time, cost, and administration burden associated with weekly testing; potential issues with the availability of testing; ULA's requirements as a federal government contractor, including NRO requirements to staff contracts with vaccinated workers; the need to comply with strict contract requirements, including launch schedules, and the potential financial risks of failure to satisfy such requirements; the nature of our workplace and business, including the need for on-site*

HR-126.B New (20 October 2021)
Copyright © 2017 United Launch Alliance, LLC as an unpublished work.  All rights reserved.

# RELIGIOUS ACCOMMODATION APPEAL FORM



*work; the need for employees to interact with others, travel, and access customer facilities, including federal facilities with strict access requirements; the number of prior COVID cases and quarantines at ULA, including multiple hospitalizations and deaths; and the presence of continued active COVID-19 cases and quarantines at ULA despite prior safety measures.*

## Decision on Appeal:

The request to review the denied accommodation to ULA's vaccine policy has been reviewed and considered by the Appeal Board.

The Appeal Board found no information or evidence that suggests or indicates the Accommodations Committee handled the employee's religious accommodation request in an unfair, biased or improper manner.  The Accommodations Committee collectively reviewed and discussed information provided by the employee to determine if the employee's objection to the COVID-19 vaccine policy was based on a sincerely held belief, observance, or practice. The Accommodations Committee discussed the employee's case without revealing the employee's name. This process maintained confidentiality to the highest degree possible.

Under Title VII of the Civil Rights Act, an accommodation for religious reasons shall be granted by an employer, unless such accommodation would cause more than a minimal burden on the operations of the business.  An employer does not have to accommodate an employee's religious beliefs or practices if doing so would cause undue hardship to the business. An accommodation may cause undue hardship if, among other things, it is costly, compromises workplace safety, decreases workplace efficiency, infringes on the rights of other employees, or requires other employees to do more than their share of potentially hazardous or burdensome work.

ULA has received contract modifications from our government customers, instructing ULA to comply with **Executive Order 14042**, *Ensuring Adequate COVID Safety Protocols for Federal Contractors*, dated September 9, 2021 (published in the Federal Register on September 14, 2021, 86 FR 50985).  Compliance also includes guidance conveyed through Frequently Asked Questions, as published by the Safer Federal Workforce Task Force (Task Force Guidance) at https://www.saferfederalworkforce.gov/contractors.

ULA received more than 100 religious accommodation requests related to the vaccine policy, and the majority passed the first prong of the Accommodation Committee's analysis – whether the religious belief, practice or observance seemed sincerely held. The second prong of analysis was to determine if the accommodation caused an undue hardship to ULA.

Several factors were considered in the undue hardship analysis, and it was determined that undue hardship existed. Among the primary factors that led to this decision are the following:

- The high number of employees who would remain unvaccinated, compromising workplace safety and increasing the likelihood of additional active cases, and exposure/quarantines among the workforce.  If a work group is exposed to an infected team member, it can result in significant disruption of operations, potentially impeding ULA's ability to meet deliverables.
- The requirement to test employees at minimum weekly in lieu of the vaccine.  Factors considered included the cost, the uncertain availability of testing supplies, facilities or testing providers, the need to establish testing protocols at multiple ULA facilities, the ongoing oversight and administration of testing, the loss of productivity while employees test/obtain results, and the disruption to the business.  Depending on their job responsibilities, employees may need more frequent testing in order to access certain customer facilities (i.e. test must be taken within last 72 hours).
- Customer requirements.  The NRO has issued notice that contractor employees who support their contracts are to be vaccinated.  If ULA desires to have an unvaccinated employee perform NRO work, ULA is required to provide the NRO a package including: **(1)** justification why that individual must be assigned to their work (and not elsewhere in the company), **(2)** a detailed plan on how the Company will mitigate the risk of having the

Copyright © 2017 United Launch Alliance, LLC as an unpublished work.  All rights reserved.

# RELIGIOUS ACCOMMODATION APPEAL FORM
COVID-19 Vaccine Policy



unvaccinated employee perform such work (including the specific place where work will be performed, the amount of in-person interaction, how ULA will enforce the mitigation efforts, and the cost, time and resource impact the NRO), and **(3)** justification of any approved medical or religious accommodations, including justifications and case-specific support for each unvaccinated employee that ULA desires to perform NRO work.  That information would be subject to NRO internal review to determine if they would grant ULA's request to have that unvaccinated employee work on their contract.  This is a highly labor intensive process and many ULA employees have already voiced objection to sharing their personal information with the NRO.  Due to the size and structure of ULA, it is not practical to segregate employees who support an NRO contract and those who do not.

Due to consideration of these primary factors listed above, ULA determined that accommodating the number of religious accommodations that passed the first prong of analysis would pose an undue hardship to the operations of the business.  The first two factors listed above apply to all employees who requested an accommodation, regardless of location or job classification.  The NRO requirements have the potential to apply to all employees, and its application to those who "support an NRO contract" is not yet defined.

In addition, the Appeal Board reviewed the specific basis for your appeal:

- ULA requires all employees to work in the office at least one day per week, as was clearly outlined in our workplace mobility policy. Permitting a significant number of employees to avoid this requirement and work remotely on a full-time basis for an indefinite period of time would cause an undue hardship by undermining the collaborative nature of our work. In addition, the federal government guidance has specifically stated that the vaccine requirement for federal contractors applies to remote workers.

- Title VII and the EEOC has specifically opined that employers may require employees to be vaccinated. Accommodation for religious beliefs is required only if it would not cause an undue burden to the employer, which in this context means more than a minimal burden. We provided multiple reasons why accommodation of your request to be exempted from the vaccine requirement would cause a burden to the company, each of which alone could be considered more than minimal burden and which, combined, more than satisfy the Title VII standard.

- Per your note, you are admitting that you are coming to the office as required and we will continue to have these work requirements indefinitely.

For the reasons listed above, the Appeal Board confirms that accommodation would cause an undue hardship to ULA, and this appeal is respectfully denied.

As per previous communications, you have 3 calendar days from receipt of this document to receive your first (Moderna or Pfizer) or final (Johnson & Johnson) COVID 19 vaccination and provide your vaccination card to ULA Medical at ula.medical@ulalaunch.com.
Proof of Vaccination Due Date: 11/07/2021 5:00PM Central Time

If your intention is to separate from ULA, we can begin that process immediately.

Date requestor was notified of appeal decision:  11/04/2021

HR-126.B New (20 October 2021)
Copyright © 2017 United Launch Alliance, LLC as an unpublished work.  All rights reserved.

# RELIGIOUS ACCOMMODATION APPEAL FORM

_Diane George_
_____
Signature

Vice President, Human Resources
_____
Title

11/04/2021
_____
Date

HR-126.B New (20 October 2021)
Copyright © 2017 United Launch Alliance, LLC as an unpublished work.  All rights reserved.

# EXHIBIT H

| | |
|---|---|
| **From:** | Benjamin Eastman |
| **To:** | Wiggs, Constantina S |
| **Subject:** | Re: Appeal Decision |
| **Date:** | Friday, November 5, 2021 4:48:28 PM |
| **Attachments:** | Benjamin Eastman_Religious Accommodation Resubmission.pdf |

Good evening,

I received your denial of my appeal of the decision to deny my request for a religious accommodation. The original denial was based in part on the fact that ULA had received too many religions exemption requests to be able to accommodate them all without an undue burden on the company.  The EEOC has specifically noted that "A mere assumption that many more people, with the same religious practices as the person being accommodated, may also need accommodation is not evidence of undue hardship."  29 C.F.R. § 1605.2.  Moreover, in order to avoid termination and the financial disruption it would cause, a significant number of those who requested exemption from the vaccine mandate have now been vaccinated, so that ULA's "too many applied" rational is no longer applicable, even if it was at the time.

I therefore respectfully request that you revisit my appeal and reverse the denial of my request for religious accommodation. To this end, I am submitting another religious accommodation appeal form. My religious beliefs are unchanged, but the suggestions for accommodation in questions 1 and 9 go into more detail disputing the determinations made by the accommodation board and by the appeal board.

I would like the opportunity to engage in an interactive discussion with you and my manager to come to a reasonable accommodation, as was detailed should have happened in HR-126.

Thank you for your time and consideration in this matter.


Very Respectfully,


Benjamin J. Eastman
Mechanical Tool Engineer 2

---

**From:** Wiggs, Constantina S <Constantina.S.Wiggs@ulalaunch.com>
**Sent:** Thursday, November 4, 2021 6:33 AM
**To:** 'eastman.astro@outlook.com' <eastman.astro@outlook.com>
**Subject:** Appeal Decision

Please see the attached appeal decision related to your request for religious accommodation.

Tina Wiggs
HR Business Partner
United Launch Alliance l www.ulalaunch.com
256-432-1109 Office
256-560-1007 Cell



This message is intended only for the use of the intended recipient. If you are not an intended recipient, you are hereby notified that any use, dissemination, disclosure or copying of this communication is strictly prohibited. If you have received this communication in error please destroy all copies of this message and its attachments and notify the sender immediately.

1. Please describe in detail the provision(s) of ULA's COVID-19 Vaccination Policy from which you are seeking accommodation and the accommodation you are requesting.

I am re-requesting an exemption from the Mandatory vaccine requirement due to the conflict it has with my religious beliefs as a Catholic. I request that I be allowed to work 100% remotely, or to be allowed into the factory with regular testing. My Manager, Mark Hart, has stated that he would rather me work remotely than lose me as an employee. Furthermore, the Tooling Department has utilized fully remote teammates in the past, such as Benjamin Hunt and Skyler Lowery.

This form is identical to the one previously submitted, with the exception of questions 1 and 9.

2. Please identify the religious belief, practice, or observance that is causing you to seek the accommodation identified in response to Question No. 1.

Core to my religious beliefs is the knowledge that life begins at conception, and that the murder of innocent human life is unjust. As a Christian, I oppose the trafficking and commodification of human beings at all stages of life, born and pre-born. I cannot, in good conscience, participate or accept practices that perpetuate and encourage the relationship between abortion and science, no matter when that connection was initiated or how long a practice has been accepted by society.

3. Please describe the conflict between such religious belief, practice, or observance and the provision(s) of the COVID-19 Vaccination Policy identified in response to Question No. 1.

All of the COVID-19 vaccine products that have received either Full Approval or Emergency Use Authorization (EUA) by the FDA in the United States were produced using aborted fetal cell lines, tested using aborted fetal cell lines, or both.

Moreover, decisions regarding vaccination must be determined by the individual and the family, not by the jurisdiction of the State or any other authority, according to biblical mandate (Romans 13:1). I have a right to uphold my own bodily integrity and moral conscience and a right to refuse medical treatment. All humans also have a right not to be trafficked, commodified, and/or experimented on without their consent—born and pre-born—and to refuse to participate in acts that permit these violations to continue.

4. Is the religious belief, practice, or observance you identified in response to Question No. 2 based on an organized religious faith to which you belong, and if so, please describe?

Yes, based on my beliefs as a Catholic and the conscience that has been formed by the Church's authority, I am morally opposed to receiving a vaccine that has been produced with or tested on aborted children.

Even if other Catholics, or indeed the Church leadership itself, do not take such a belief, according to the Supreme Court Case Thomas v. Review Board of the Indiana Employment Security Division, 450 U.S. 707, the guarantee of free exercise of my religious belief is not limited to beliefs which are shared by all the members of a religious sect.

5. If your request for accommodation is not based on an organized religious faith to which you belong, please describe the basis for the religious belief, practice, or observance you have identified in response to Question No. 2.

N/A

6. Have you received other vaccinations previously? If so, please describe why the religious belief, practice, or observance you have identified did not prevent you from getting that vaccination(s).

I have received several as a child. To my knowledge, no vaccine that I have received as an adult has been derived from or tested on aborted fetal cell lines.

7. Would receiving a COVID-19 vaccine interfere with your ability to practice your religion? If so, please explain.

Yes.
"The Divine Law," says Cardinal Gousset, "is the supreme rule of actions; our thoughts, desires, words, acts, all that man is, is subject to the domain of the law of God; and this law is the rule of our conduct by means of our conscience. Hence it is never lawful to go against our conscience; as the Fourth Lateran council says, 'Quidquid fit contra conscientiam, aedificat ad gehennam.'" ["Whatever is done in opposition to conscience is conducive to damnation."]

8. Please describe how the religious belief, practice, or observance you have identified in response to Question No. 2 effects other aspects of your life, such as if it prevents you from receiving certain medical care.

As a Catholic, I am not allowed to use Contraceptives of any form, because they might cause the inadvertent abortion of a child, and also because they frustrate the purpose of the marital act to participate in the creation of human life. I also am required to abstain from any medical treatment that causes harm or death of another individual or myself. An example of such would be the participation or encouragement of Abortion, Euthenasia, or any medication, vaccine, or food product that has been derived from or tested on aborted fetal cell lines.

9. Is there anything else you would like the company to know about your request for accommodation? If so, please provide that information here or attach any documents you wish to provide.

The reason for my initial denial, as outlined in the form sent to me on October 22, was that it would result in an undue hardship on ULA to accommodate my religious beliefs. There were several factors that apparently contributed to that determination. I will now detail why each of these is not relevant to my current request.

- High volume of Requests
    - This is no longer relevant. My understanding is that fewer than 50 employees in the Decatur Factory appealed the decision.

- The need to ensure a healthy and safe workplace
    - o My desk faces two walls. My two neighbors in the cubicle are both fully vaccinated, and additionally there is a plexiglass wall between my closest neighbor and me.
    - o This is not a factor if I am allowed to work 100% remotely.
- The time, cost, and administration burden associated with weekly testing.
    - o All of these burdens are greatly reduced with the aforementioned decreased number of individuals requesting an appeal to the decision.
    - o Weekly testing would not be required if I could work 100% remotely.
- Potential Issues with the availability of testing
    - o If testing is unavailable, I could temporarily work 100% remotely until I am able to test.
- ULA's requirements as a federal government contractor, including NRO requirements to staff contracts with vaccinated workers
    - o As a Tool Engineer, I do not work on specific contracts. In fact, I am never aware of what mission in particular my tools will be used for.
- The need to comply with strict contract requirements, including launch schedules, and the potential financial risks of failure to satisfy such requirements
    - o The Tool Engineering department has been understaffed for over two years now. It was not until August of this year that the department was given permission to hire additional team members, and those spots have been unable to be filled since then. If a lack of Tooling support contributes to missing launch schedules, firing the engineers who design those tools will be the cause of missing those schedules, not COVID-19.
- The nature of our work place and business, including the need for on-site work
    - o My job can be done 100% remotely, as evidenced by the fact that our department has previously utilized entirely remote teammates such as Benjamin Hunt and Skyler Lowery.
- The need for employees to interact with others, travel, and access customer facilities, including federal facilities with strict access requirements.
    - o I can do my job by interacting over Web-Ex or skype, or from 6 feet away.
    - o I have travelled for work only one time in the 3.5 years I have been in my current position. That was to evaluate Tooling being developed by the contractor Ascent, which is no longer a possibility since all the major development tooling has been delivered. Tool Engineers have no need to access federal facilities.
- The number of prior COVID cases and quarantines, including multiple hospitalizations and deaths
    - o Every prior COVID case makes the work force more resistant to an outbreak, as natural immunity has been demonstrated as vastly superior to immunity from vaccines.
- The presence of continued active COVID-19 cases and quarantines despite prior safety measures.
    - o The number of COVID-19 cases that our company experiences has dramatically decreased. Additionally, with the majority of employees at ULA getting the vaccine, this chance is further lowered.

*Benjamin J Eastma*

# EXHIBIT I

**From:** Benjamin Eastman
**To:** Wiggs, Constantina S
**Subject:** Re: Appeal Decision
**Date:** Monday, November 8, 2021 12:59:05 PM

The prior decision was explicitly based on the "high volume of requests to accommodate" that were received. Due to terminations, vaccinations by employees who had their request denied, or retirements, that number has obviously changed. Since you are clearly unwilling to reconsider in light of this changed circumstance, I will be in at 3.

Thank you.

Benjamin Eastman

Get Outlook for Android

**From:** Wiggs, Constantina S <Constantina.S.Wiggs@ulalaunch.com>
**Sent:** Monday, November 8, 2021 1:28:52 PM
**To:** 'Benjamin Eastman' <Eastman.Astro@outlook.com>
**Subject:** RE: Appeal Decision

Contrary to your suggestion, the circumstances underlying our undue burden determination have not changed significantly and there is no basis to reconsider the decision on your accommodation request, which remains final.

Please let me know if you are able to attend the 3:00 exit time we previously scheduled.

Tina Wiggs
HR Business Partner
United Launch Alliance l www.ulalaunch.com
256-432-1109 Office
256-560-1007 Cell



**From:** Benjamin Eastman <Eastman.Astro@outlook.com>
**Sent:** Monday, November 08, 2021 12:07 PM
**To:** Wiggs, Constantina S <Constantina.S.Wiggs@ulalaunch.com>
**Subject:** EXTERNAL: Re: Appeal Decision

**\*\*\* EXTERNAL EMAIL – Be suspicious of attachments, links, and requests for login information. \*\*\***

Hello,

After further consultation with my lawyer, I do not believe that it is appropriate for me to have my exit interview today at 3 pm while I am waiting on a resolution to my renewed accommodation request. Your statement that "the decision of the appeals board is final" does not accomplish this. To that end, I am cancelling my exit interview until I have official notification on this second accommodation request from you or someone else at ULA.

Thank you for your time and consideration in this matter.

Very Respectfully,
Benjamin Eastman

---

**From:** Benjamin Eastman <Eastman.Astro@outlook.com>
**Sent:** Monday, November 8, 2021 9:36 AM
**To:** Wiggs, Constantina S <Constantina.S.Wiggs@ulalaunch.com>
**Subject:** Re: Appeal Decision

Good morning,

I would like to clarify, this is not an Appeal of the Appeal. This is a second, separate request for Religious Accomodation in light of the changed circumstances at ULA, namely that the number of people requesting Religious Exemptions to the Vaccine Mandate has dropped significantly.

Thank you for your time and consideration in this matter.

Very Respectfully,
Benjamin Eastman

---

**From:** Wiggs, Constantina S <Constantina.S.Wiggs@ulalaunch.com>
**Sent:** Monday, November 8, 2021 9:59:49 AM
**To:** 'Benjamin Eastman' <Eastman.Astro@outlook.com>
**Subject:** RE: Appeal Decision

ULA is in receipt of your follow-up note.

The decision of the Appeals Board is final.

Tina Wiggs
HR Business Partner
United Launch Alliance l www.ulalaunch.com
256-432-1109 Office
256-560-1007 Cell



**From:** Benjamin Eastman <Eastman.Astro@outlook.com>
**Sent:** Friday, November 05, 2021 5:48 PM
**To:** Wiggs, Constantina S <Constantina.S.Wiggs@ulalaunch.com>
**Subject:** EXTERNAL: Re: Appeal Decision

**\*\*\* EXTERNAL EMAIL – Be suspicious of attachments, links, and requests for login information. \*\*\***

Good evening,

I received your denial of my appeal of the decision to deny my request for a religious accommodation.  The original denial was based in part on the fact that ULA had received too many religions exemption requests to be able to accommodate them all without an undue burden on the company.  The EEOC has specifically noted that "A mere assumption that many more people, with the same religious practices as the person being accommodated, may also need accommodation is not evidence of undue hardship."  29 C.F.R. § 1605.2.  Moreover, in order to avoid termination and the financial disruption it would cause, a significant number of those who requested exemption from the vaccine mandate have now been vaccinated, so that ULA's "too many applied" rational is no longer applicable, even if it was at the time.

I therefore respectfully request that you revisit my appeal and reverse the denial of my request for religious accommodation. To this end, I am submitting another religious accommodation appeal form. My religious beliefs are unchanged, but the suggestions for accommodation in questions 1 and 9 go into more detail disputing the determinations made by the accommodation board and by the appeal board.

I would like the opportunity to engage in an interactive discussion with you and my manager to come to a reasonable accommodation, as was detailed should have happened in HR-126.


Thank you for your time and consideration in this matter.

Very Respectfully,

Benjamin J. Eastman
Mechanical Tool Engineer 2

---

**From:** Wiggs, Constantina S <Constantina.S.Wiggs@ulalaunch.com>
**Sent:** Thursday, November 4, 2021 6:33 AM
**To:** 'eastman.astro@outlook.com' <eastman.astro@outlook.com>

**Subject:** Appeal Decision

Please see the attached appeal decision related to your request for religious accommodation.

Tina Wiggs

HR Business Partner

United Launch Alliance l [www.ulalaunch.com](http://www.ulalaunch.com)

256-432-1109 Office

256-560-1007 Cell



---

This message is intended only for the use of the intended recipient. If you are not an intended recipient, you are hereby notified that any use, dissemination, disclosure or copying of this communication is strictly prohibited. If you have received this communication in error please destroy all copies of this message and its attachments and notify the sender immediately.

**EXHIBIT J**



# Exit Discussion Checklist

**Employee Name:** Benjamin Eastman          **Employee Number:** 20018865

**Site:** Decatur          **Term Effective Date:** 11-17-2021   **Exit Date:** 11-8-2021

- ☐ Benefits Separation Information
- ☐ Post-Employment Important Contacts
- ☑ COBRA
- ☐ · Employee Assistance Program Brochure
- ☑ MyADP iPay Information
- ☑ Confirm Current Contact Info
- ☑ Provide Home Address Change
- ☑ Proprietary Information Protection Acknowledgement
- ☑ Offboarding Disclosure Acknowledgement

**Employee Signature:** _____   **Exit Focal Signature:** _____

Proprietary Information Protection Acknowledgement

| Employee Name: Benjamin Cosmo | EIN: 200186165 |
|---|---|
| Department: | Position: |
| Location: Decatur | Employee Class: |
| Cost Center: | Employee Type: |
| Employment Type: | Manager: |
| Division: | Last Day of Work: 10-29-2021 |
| Reason for Resignation: ~~Voluntary~~ Not Voluntary    BE | |

## Manager:

**Instructions:** Consult with the offboarding employee **immediately** to determine if the employee has worked on any significant proposals or other efforts that may create a conflict or other competitive advantage with the employee's new employer. **Review and acknowledge this section as soon as possible as this section is a part of the employee's offboarding forms.** Inquire as to whether the employee had access to third party proprietary information or other competitive information, or worked on certain programs that could enable the employee to give the new employer a competitive advantage. This will assist the employee in understanding the sensitivity of this information and matters supported while at ULA, and the need to protect the information to ensure it is not disclosed to the new employer. It will also assist the employee in identifying such information and matters to their new employer in the event the new employer needs to take any steps to ensure that no improper competitive advantage is created through the hiring of such individual. This is especially true if the employee is moving to one of ULA's parent companies, Lockheed Martin or Boeing.

After your discussion with the employee, list the proprietary items or information identified. If there is no proprietary information in the employee's possession, please enter "None".

-- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- --

## Employee:

**Instructions:** Please review and complete the following questions.

- For benefits and proprietary information purposes, will you be working for a parent/member company?
  Yes [  ] No [x]
  If Yes, which member company _____

- Do you plan to work for a competitor company?
  Yes [  ] No [x] Choose Not to Disclose [  ]   If Yes, please list which competitor: _____

## PROPRIETARY INFORMATION PROTECTION ACKNOWLEDGEMENT

In accordance with the policy of United Launch Alliance, L.L.C. (ULA) relating to terminating employees, you are reminded of certain continuing obligations that you have to ULA concerning the protection of inventions and proprietary information (e.g., Non-public Space Vehicle Information (NPSVI)), business, technical or otherwise and including previous, current or future technical or business plans, processes and strategies, computer software and documents made, created or acquired by you in carrying out your duties as an employee. These obligations were established in the Intellectual Property and Confidentiality Agreement you signed when you were hired by ULA. Specifically:

(1) Any invention made by you during your employment should be disclosed to the ULA Law Department prior to termination;

(2) You may not use or disclose any non-public information belonging to ULA or any third party, including NPSVI, nor may you use or disclose such information in connection with work to be performed for another employer or in performing consulting work for anyone else;

(3) You will coordinate with your direct manager to identify those matters/information that you worked on during your employment at ULA which may require the taking of special measures to protect the integrity of such information. These matters/information, if any, are identified on this form.

(4) All non-public information, including NPSVI, embodied in documents, notebooks, drawings, records or the like (regardless of their form) originated or maintained by or for you, or that to which you may have had access in connection with your duties at ULA is considered by ULA to be its proprietary, confidential and/or trade secret information or proprietary information entrusted to ULA by others such as The Boeing Company and Lockheed Martin Corporation. Such information is of continuing importance and value to ULA and/or our customers and suppliers. All such information in any form, e.g., hard copy or soft copy, must be returned to your manager prior to your termination of employment and must not be removed from premises occupied or controlled by ULA. If you desire to remove any information in any form, you must first obtain the prior written approval of the appropriate ULA Vice President or Director.

In addition to the above obligations to ULA, U.S. Government regulations state that you may not export certain unpublished technical data or disclose such technical data to foreign nationals, whether or not such technical data is proprietary, without individually obtaining an appropriate license from the U.S. Government prior to any such export ULA expects that you will take the necessary precautions to ensure that your obligations are met and that proprietary information to which you may have had access is not compromised in any manner. If you should have any questions concerning the nature of your obligations with respect to inventions and proprietary information, including NPSVI, please do not hesitate to contact the ULA Law Department.

Any unauthorized disclosure or misuse of proprietary information that you had in your possession while employed by ULA, whether owned by ULA or by a third party, is a breach of your obligations established under the Intellectual Property and Confidentiality Agreement and may also violate federal law. ULA expressly reserves the right to take any legal action necessary to protect ULA proprietary information or to otherwise recover from you any damages incurred as a result of such unauthorized disclosure or misuse of proprietary information, to the fullest extent permitted by law

ULA expects that you will take the necessary precautions to ensure that your obligations are met and that proprietary information to which you may have had access is not compromised in any manner. If you should have any questions concerning the nature of your obligations with respect to inventions and proprietary information, please do not hesitate to contact the ULA Law Department.

Manager Name/Signature _____     Date: 11-8-2021

Employee Name/Signature; _____     Date: 11-8-2021

Manager Notes:

# EXHIBIT K

| | |
|---|---|
| **From:** | Benjamin Eastman |
| **To:** | constantina.s.wiggs@ulalaunch.com |
| **Subject:** | SB9 Form |
| **Date:** | Wednesday, November 10, 2021 7:00:29 AM |
| **Attachments:** | SB9_Form_Eastman_Signed.pdf |
| **Importance:** | High |

Dear Ms. Wiggs,

 As you probably know, on November 4 the Alabama legislature passed, and the Governor signed into law, SB9 (Act 2021-561).  That act specifically allows employees to request a medical and/or religious exemption from vaccine mandates on a specified form, allows for employees whose requests for exemption are denied to appeal that decision to an administrative law judge at the Alabama Department of Labor, and prohibits employers from "terminat[ing] the employee on the basis of failing to receive a vaccination … until the administrative law judge or the court issues a final ruling in the employer's favor."

Pursuant to this statute, I am hereby requesting an exemption on the basis checked in the attached form.

In the event you choose to deem my prior request for exemption that you already denied as sufficient to meet your obligations under this new statute, I hereby notify you that I will be filing an appeal of that denial with the Alabama Department of Labor within the time frame specified in the statute.  Until that appeal is resolved, you can neither terminate me (subsection (h)(1)), or reduce my rate of compensation (subsection (h)(2)).

I understand that you have taken the position that President Biden's Executive Order preempts the Alabama law.  That is not true.  The Guidance issued by the Safer Federal Workforce Task Force pursuant to that task force expressly exempts from the vaccination requirement employees who are "legally entitled to an accommodation."  Accordingly, there is nothing in the Alabama law that is in conflict with the Executive Order (even assuming it is valid; the parallel OSHA order for other private employers was enjoined last Saturday by the U.S. Court of Appeals for the Fifth Circuit).  I trust you will therefore abide by Alabama law, process my renewed request for religious accommodation, and not terminate my employment nor reduce my compensation pending resolution of any appeal that I file with the Alabama Department of Labor.  Accordingly, I intend to show up to work tomorrow ready to resume my job duties.  Please provide me instructions so that I can regain the necessary access to ULA's facility.

Thank you for your time and consideration in this matter.

Very Respectfully,
Benjamin Eastman

This form has been prepared in accordance with Alabama Act No. 2021-561, which was introduced as SB9 in the 2021 second special session and signed into law by Governor Ivey on November 4, 2021. Section 1(c) provides: "**An employer <u>shall exempt</u> vaccination as a condition of employment for any employee who has completed and submitted the exemption form described in subsection (e).**" <u>The language below is copied verbatim from Section 1(e)</u>.

Any individual in the State of Alabama who is subject to a requirement that he or she receive one or more COVID-19 vaccinations as a condition of employment may claim an exemption for medical reasons, because the vaccination conflicts with sincerely held religious beliefs, or both.

You may request either a medical or a religious exemption from the COVID-19 vaccination by completing this form and submitting the form to your employer.

In the event your employer denies this request, you have a right to file an appeal with the Department of Labor within 7 days. Your employer will provide you with information on how to file an appeal.

I am requesting exemption from the COVID-19 vaccine requirements for one of the following reasons: (check all that apply)

____ My health care provider has recommended to me that I refuse the COVID-19 vaccination based on my current health conditions and medications. (NOTE: You must include a licensed health care provider's signature on this form to claim this exemption.)

____ I have previously suffered a severe allergic reaction (e.g., anaphylaxis) related to vaccinations in the past.

____ I have previously suffered a severe allergic reaction related to receiving polyethylene glycol or products containing polyethylene glycol.

____ I have previously suffered a severe allergic reaction related to receiving polysorbate or products containing polysorbate.

____ I have received monoclonal antibodies or convalescent plasma as part of a COVID-19 treatment in the past 90 days.

____ I have a bleeding disorder or am taking a blood thinner.

____ I am severely immunocompromised such that receiving the COVID-19 vaccination creates a risk to my health.

____ I have been diagnosed with COVID-19 in the past 12 months.

_X_ Receiving the COVID-19 vaccination conflicts with my sincerely held religious beliefs, practices, or observances.

I hereby swear or affirm that the information in this request is true and accurate. I understand that providing false or misleading information is grounds for discipline, up to and including termination from employment.

_Benjamin J. Eastman_
Employee's Printed Name

_Benjamin J Eastman_
Employee's Signature

_9 November, 2021____ _
Date

**EXHIBIT L**

# EEOC (INQUIRY) NUMBER: 420-2022-00338

## Inquiry Information

### REASON(S) FOR CLAIM

**Date of Incident (Approximate):**  10/29/2021

**Reason for Complaint:**  Religion

**Pay Disparity:**

**Location of Incident:**  Alabama

**Submission (initial inquiry) Date:**  11/05/2021

**Claim previously filed as charge with EEOC?**  No

**Approximate Date of Filing:**  N/A

**Charge Number:**  N/A

**Claim previously filed as complaint with another Agency?**  No

**Agency Name:**  N/A

**Approximate Date of Filing:**  N/A

**Nature of Complaint:**  N/A

### INQUIRY OFFICE

**Receiving:**  Birmingham District Office

**Accountable:**  Birmingham District Office

### APPOINTMENT

**Appointment Date and time:**  02/18/2022 08:30 AM US/Central

**Interview Type:**  Phone

### APPROXIMATE DEADLINE FOR FILING A CHARGE:  04/28/2022

### POTENTIAL CHARGING PARTY

**First Name, Middle Initial:**  Benjamin, J

**Last Name:**  Eastman

**Street or Mailing Address:**  1928 Melbourne Ave

**Address Line 2:**

**City, State, Zip:** HUNTSVILLE, AL, 35801

**Country:** UNITED STATES OF AMERICA

**Year of Birth:**

**Email Address:** benjammin29@gmail.com

**Home Phone Number:**

**Cell Phone Number:** (562) 900-3902

## RESPONDENT/Employer

**Organization Name:** UNITED LAUNCH ALLIANCE LLC

**Type of Employer:** Business or non-profit organization that I applied to, work for, or worked for

**Number of Employees:** 20 or more employees

**Street or Mailing Address:** 9501 E PANORAMA CIR

**Address Line 2:**

**City, State, Zip Code:** CENTENNIAL,CO, 80112

**County:** Arapahoe

**Phone Number:** (720) 922-7100

## RESPONDENT CONTACT

**First and Last Name:**

**Email Address:**

**Phone Number:**

**Title:** Human Resources Director or Owner

## LOCATION OF POTENTIAL CHARGING PARTY'S EMPLOYMENT

**Street or Mailing Address:** 1001 Red Hat Rd

**Address Line 2:**

**City, State, Zip Code:** DECATUR, AL, 35601

**County:** Morgan

## POTENTIAL CHARGING PARTY'S DEMOGRAPHICS

**Gender:** M

**Disabled:**  I do not have a disability

**Are you Hispanic or Latino?**  hispanic or latino

**Ethnicity:**  White,

**National Origin:**  American(U.S.)

## Adverse Action(s)

My company put a Vaccination Mandate into effect. All employees were given an opportunity to file requests for religious or medical accommodation by October 1. On September 21, I filed such a request for a religious accommodation due to my sincerely held religious beliefs against participating in abortion. The company set a deadline of receiving the first dose of the vaccine by October 29. On October 22, I was informed that my religious accommodation was denied because the high volume of requests created an undue hardship on the company. I submitted an appeal to the Company Appeal Board on October 27, which was subsequently denied on November 4. I have been on Unpaid Administrative Leave since October 30. If I do not submit proof of vaccination by November 7, I will be terminated. My company has made it clear that they will not fire me, but will take my lack of vaccination status as a resignation, thus denying me the opportunity to file for unemployment.

# Supplemental Information

**What Reason(s) were you given for the action taken against you?**

N/A

**Was anyone in a similar situation treated the same, better, or worse than you?**

N/A

**Please provide name(s) and email and/or phone number of anyone who will support your claim, and briefly describe the information this person will provide.**

N/A

**Please tell us any other information about your experience?**

N/A

# EXHIBIT M

**From:**       noreply@eeoc.gov
**To:**         benjammin29@gmail.com
**Subject:**    Notice of Scheduled Interview
**Date:**       Friday, November 5, 2021 11:05:38 AM

You are scheduled for an interview by Phone with the Equal Employment Opportunity Commission (EEOC) regarding your inquiry **420-2022-00338**. This email confirms your appointment with an EEOC representative of the **Birmingham** office for **02/18/2022 at 08:30 AM CST**.

On the day of your interview, please have the password for your EEOC Public Portal user account with you

Before your interview, please visit EEOC Public Portal as soon as possible to provide additional information about your inquiry. Providing additional information is optional, but can help make the interview more productive and efficient. You may add or edit the additional information up until you have your interview with EEOC. The information you provide is confidential and will not be disclosed to your employer during an investigation.

**ANSWERING THESE QUESTIONS IS NOT THE SAME AS FILING A CHARGE OF DISCRIMINATION.**

A charge of discrimination is a signed statement asserting that an organization engaged in employment discrimination. It requests EEOC to take remedial action. The laws enforced by EEOC, except the Equal Pay Act, require you to file a charge before you can file a lawsuit for unlawful discrimination. There are strict time limits for filing a charge.

To change or cancel your appointment, please log into the EEOC Public Portal and select the Schedule an Interview option for your inquiry.

*Notice of Confidentiality: The information contained in this transmission may contain privileged and confidential information, including information protected by federal and state privacy laws. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution, or duplication of this communication is strictly prohibited and may be unlawful. If you are not the intended recipient, please contact us at digitalsupport@eeoc.gov and destroy all copies of the original message and attachments.*