FILED
2021 Nov-16  PM 04:23
U.S. DISTRICT COURT
N.D. OF ALABAMA



**IN THE UNTIED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| HUNTER CREGER, individually and on behalf of all other similarly situated, et al., | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION NO.: |
| v. | ) | |
| | ) | 5:21-cv-01508-AKK |
| United Launch Alliance, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION**

## I.   INTRODUCTION

Defendant United Launch Alliance, LLC contends Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction ("Motion") should be denied. Plaintiffs' arguments are no more serious or immediate than any other disagreement over an employer's policy and the effects associated with implementing a policy. Plaintiffs ask this Court to issue a temporary restraining order and a preliminary injunction enjoining Defendant from terminating, or deeming as "voluntarily resigned," any employee who has a religious or medical basis for seeking an accommodation in relation to Defendant's COVID-19 vaccination policy. Plaintiffs further request the Court use its supplemental

jurisdiction to order Defendant to continue paying any Plaintiffs who have already been terminated. Tellingly, the last sentence of Plaintiffs' Motion provides: "By granting temporary preliminary relief, the Court will ensure that the EEOC and this Court will be able to order meaningful relief later, as warranted by law." As argued more thoroughly below, Title VII and the Americans with Disabilities Act ("ADA") already provide "meaningful" and adequate relief without the need for a temporary restraining order and preliminary injunction.

Plaintiffs do not challenge Defendant's vaccination policy or any vaccine mandates from the state or federal government. Doc. 3 at 1-2. Plaintiffs contend they have been harmed by Defendant's enforcement of its vaccine policy, which is no different than a plaintiff disagreeing with any other policy by his or her employer. This is evident because Plaintiffs argue they have been harmed collectively through the loss of income, loss of insurance, inability to find other employment, inability to meet financial goals, stress on spouse's medical condition, and effects on mortgage eligibility. This Court's November 12, 2021 Order[1] provided: "Loss of income due to termination, even if coupled, for example, with 'an insufficiency of savings or difficulties in immediately obtaining other employment[,] . . . will not support a

---

[1] With regards to Plaintiff Benjamin Eastman's claimed loss of income and effected mortgage eligibility, the Court's November 12, 2021 Order held: "Neither of these alleged injuries 'cannot be undone through monetary remedies,' *Brown*, 4 F.4th at 1235, and thus 'fall[] short of the type of irreparable injury which is a necessary predicate to the issuance of a temporary injunction.'" Doc. 2 at 2-3 (quoting *Sampson*, 415 U.S. at 91-92).

finding of irreparable injury, however severely [these factors] may affect a particular individual.'" *Sampson v. Murray*, 415 U.S. 61, 92 n.68 (1974)." Doc. 9 at 2.

Plaintiffs have not demonstrated irreparable harm will occur, a substantial likelihood of success on the merits, or that the public and others will not be harmed by any injunction.  As such, Plaintiffs have fallen far short of demonstrating their entitlement to a temporary restraining order or preliminary injunction.

## II.   <u>STATEMENT OF FACTS</u>

According to Plaintiffs, in light of the public health crisis caused by COVID-19, on August 25, 2021, Defendant announced its intention to require all employees to be vaccinated as a condition of employment beginning September 1, 2021.[2]  Doc. 3 at 4 (including the affidavits as referenced therein). On September 1, 2021, Plaintiffs claim Defendant announced that employees were required to have their first dose of the Pfizer or Moderna vaccine, or the single dose Johnson & Johnson vaccine, by October 29, 2021. *Id.*  Employees were required to have the second dose of the Pfizer or Moderna vaccine by November 30, 2021. *Id.* Defendant announced that employees would be eligible to receive an exemption based on medical conditions and sincerely held religious beliefs. *Id.*

---

[2]  Defendant notes that Plaintiffs' Motion and Memorandum contain multiple factual inaccuracies. Defendant objects to the facts presented by Plaintiffs but reserves the right to later dispute the inaccuracies at the appropriate time. Even if assuming the facts presented by Plaintiffs to be true, Plaintiffs' Motion still fails.

## III.   <u>LEGAL STANDARD</u>

A temporary restraining order or preliminary injunctive relief "is a powerful exercise of judicial authority" that is an "extraordinary and drastic remedy." *Global Lab Partners, LLC v. DirectMed DX, LLC*, No. 3:18cv246-MCR/CJK, 2018 U.S. Dist. LEXIS 24161, at **6-7 (N.D. Fl. Feb. 14, 2018).   In the Eleventh Circuit a party seeking a temporary restraining order or preliminary injunction must establish: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest.  *Schiavo ex rel. Schindler v. Chiavo*, 403 F.3d 1223, 1225-1226 (11th Cir. 2005).  Additionally, a moving party must show that the injury it will suffer is "neither remote nor speculative, but actual and imminent.  An injury is 'irreparable' only if it cannot be undone through monetary remedies." *Saintlot v. Whitehead*, No. 3:18-cv-00441, 2020 U.S. Dist. LEXIS 247891, at *3 (N.D. Fla. 2020), citing *Northeastern Florida Chapter of Ass'n of General Contractors v. Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990). Plaintiffs' Motion must be denied because they cannot prove the four elements necessary to obtain a temporary restraining order or preliminary injunction.

## IV.   ARGUMENT

### A.   Plaintiffs Will Not Suffer Irreparable Harm Because Adequate Remedies Exist

Plaintiffs' Motion fails as they cannot demonstrate irreparable harm. Any alleged harm can be remedied by a damages award, if Plaintiffs were ultimately successful on their claims, as with any lawsuit under Title VII or the ADA.  A showing of irreparable harm is "the *sine qua non* of injunctive relief." *Northeastern Florida Chapter of Ass'n of General Contractors v. Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990). Irreparable harm is characterized as "neither remote nor speculative, but actual and imminent."  *Id.*  The mere possibility of harm is not sufficient; and the movant must show that it is likely to suffer irreparable harm if equitable relief is denied.  *See Brown v. Sec'y, United States HHS,* 4 F.4ᵗʰ 1220, 1225 (11th Cir. 2021). An irreparable injury is one that "cannot be undone through monetary remedies." *Id*. at 1235 (11th Cir. 2021) (citing *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990)); *see also SME Racks, Inc. v. Sistemas Mecanicos Para, Electronica, S.A.*, 243 Fed. Appx. 502, 504 (11th Cir.2007) ("[I]f an injury can be 'undone through monetary remedies,' it is not irreparable.").  As the moving party, Plaintiffs bear the burden of proving that their alleged injury cannot be compensated with monetary damages. *See Berber v. Wells Fargo Bank, N.A.*, 760 Fed. Appx. 684, 687 (11th Cir. 2019).

Plaintiffs have not and cannot meet this burden. Pecuniary injuries and generalized fear of presumed termination of employment do not constitute irreparable injury. The United States Supreme Court has made it clear that injunctive relief is not appropriate in the vast majority of employment disputes, even those involving termination and loss of earnings or damage to reputation. *See Sampson v. Murray*, 415 U.S. 61, 90 (1974) (the availability of damages prevents a plaintiff from claiming irreparable harm). Plaintiffs submitted affidavits by Zachary Breland, Christopher Hunter Creger, Michael Lance Norwood, Sherrie Maine, and Benjamin James Eastman. Docs. 3-1 through 3-5. The alleged harm mentioned by the affidavits collectively include loss of income, loss of insurance, inability to find other employment, inability to meet financial goals, stress on spouse's medical condition, and effects on mortgage eligibility. *Id.*

The purported harm claimed by the Plaintiffs, even if true, does not establish immediate and irreparable harm sufficient to entitle Plaintiffs to the extraordinary remedy of a preliminary injunction. *See Sampson*, 415 U.S. at 90; *Berber,* 760 Fed. Appx. at 686-87 (former employee's claims that her firing rendered her unemployable, pushed her into poverty, and exacerbated her depression were wholly compensable with a monetary remedy). Loss of income due to termination, even if coupled, for example, with "an insufficiency of savings or difficulties in immediately obtaining other employment[,] . . . will not support a finding of

irreparable injury, however severely [these factors] may affect a particular individual." *Id.* at 92 n.68 (1974); *see also Del Canto v. Sheraton-Carlton Hotel*, No. 92-0509, 1992 U.S. Dist. LEXIS 3104, at *5 (D.C. Cir. March 13, 1992) (inability to work pending final resolution of the complaint was not an irreparable harm); *Dos Santos v. Columbus-Cuneo-Cabrini Medical Center*, 684 F.2d 1346, 1349 (7th Cir. 1982) (temporary loss of income and inability to obtain other employment is not considered irreparable harm because "this deprivation can be fully redressed by an award of monetary damages"); *Datto v. Univ. of Miami*, No. 18-CV-21053, 2019 U.S. Dist. LEXIS 200513, at *27 (S.D. Fl. Nov. 18, 2019) (the plaintiff's termination did not amount an injury that establishes irreparable harm); *Rao v. New York City Health & Hosp. Corp.*, No. 89 Civ. 2700, 1991 U.S. Dist. LEXIS 4865, at *6 (S.D.N.Y. April 12, 1991) ("Financial distress or inability to find other employment does not establish the requisite irreparable harm, unless truly extraordinary circumstances are shown.").

Other district courts concluded in similar cases challenging employer vaccine requirements that Plaintiffs have an adequate legal remedy that precludes injunctive relief as follows:

> Assuming that there is a substantial likelihood of success on the merits, the plaintiffs have an adequate remedy at law.  If they are wrongfully terminated, the plaintiffs can sue the hospital on those grounds to recover monetary damages.

*Bridges v. Houston Methodist Hosp.*, No. H-21-1774, Order Denying Temporary Restraint (Doc. 10) (S.D. Tex. June 4, 2021) (Ex 2). *See also Norris v. Stanley*, No. 1:21-cv-756, 2021 U.S. Dist. LEXIS 168444 at *8 (W.D. Mich. Aug. 31, 2021) (no irreparable harm where vaccinate or terminate policy could be compensated with lost wages and benefits); *Harsman*, 2021 U.S. Dist. LEXIS 187841 at *13 ("Threats to Plaintiffs' "careers," "reputations," and the risk of "bankruptcy" or "foreclosure" are quintessentially compensable injuries."); *Beckerich*, 2021 U.S. Dist. LEXIS 183757 at *19 ("Even if they believe the condition or the consequences are wrong, the law affords them an avenue of recourse—and that avenue is not injunctive relief on this record."); *Barrington v. United Airlines, Inc.*, 2021 U.S. Dist. LEXIS 201633, at *10 (D. Colo. Oct. 14, 2021) (plaintiff's claims that her home would go into foreclosure, her career would be destroyed, and no future employer would ever be willing to hire her were speculative and did not demonstrate irreparable harm given that such losses are compensable by monetary damages).

Under Title VII and Title I of the ADA, a prevailing plaintiff may recover lost wages, compensatory damages, punitive damages, and attorneys' fees. 42 U.S.C. § 1981a(a)-(b). Additionally, a prevailing plaintiff may recover equitable relief under Title VII and Title I of the ADA as deemed appropriate by the court—including but not limited to job reinstatement. *See* 42 U.S.C. § 2000e-5(g).

Because adequate remedies exist Plaintiffs' Motion should be denied.

**B.     Plaintiffs Are Not Substantially Likely to Succeed on the Merits of Their Title VII and ADA Claims**

Although the lack of irreparable harm is alone sufficient to deny Plaintiffs' Motion, the Court can also deny Plaintiffs' Motion because they have not established (and cannot establish) a substantial likelihood of success on the merits of their claims.

**1.     Plaintiffs Have Failed to Exhaust Administrative Remedies**

Plaintiffs' Motion is due to be denied because they failed to exhaust their administrative remedies through the EEOC prior to filing the instant case. Before initiating a lawsuit under Title VII or the ADA (Title I), a plaintiff must first exhaust administrative remedies. 42 U.S.C. § 12117(a) (incorporating 42 U.S.C. § 2000e-5); s*ee Liu v. Univ. of Miami Sch. Of Med.*, 693 Fed. Appx. 793, 796 (11th Cir. 2017); *see also Batson v. Salvation Army*, 897 F.3d 1320, 1327 (11th Cir. 2018) (applying Title VII exhaustion law to an ADA claim). The purpose of the exhaustion requirement is "to give the agency the information it needs to investigate and resolve the dispute between the employee and the employer." *Liu*, 693 Fed. Appx. at 796.

Thus, in order to commence a Title VII or ADA (Title I) action in federal district court, "a private plaintiff must file an EEOC complaint against the discriminating party **and receive statutory notice from the EEOC of his right…. to sue** the respondent named in the charge." *Royster v. YMCA*, No. 3:06cv238/RV/MD, 2006 U.S. Dist. LEXIS 99762, at *6 (N.D. Fl. July 6, 2006)

9

(emphasis added); *see also Batson v. Salvation Army*, 897 F.3d 1320, 1327 (11th Cir. 2018) (applying Title VII exhaustion law to an ADA claim). Contrary to their assertions, Plaintiffs cannot forgo exhausting their administrative remedies under Title VII or the ADA simply because they may face pecuniary or monetary injury (i.e., the loss of employment or pay). The Plaintiffs filed EEOC Charges, but they have not received a right to sue. The loss of employment or a monetary injury is invariably what every plaintiff asserting a Title VII or ADA claim has faced or faces. Plaintiffs cannot be permitted to bypass the fundamental requirement of exhausting their administrative remedies simply because their employment might be (or has been) terminated.

Plaintiffs fail to cite an Eleventh Circuit case granting temporary injunctive relief where the purported harm was similar to the instant matter. In *Hicks v. Dothan City Bd. of Educ.*, 814 F. Supp. 1044, 1049-50 (M.D. Ala. 1993), the court found irreparable harm because the plaintiff faced the potential of not receiving the promotion to principal, which was a position that rarely became available. Plaintiffs have made no such claims in the instant matter. Additionally, Plaintiffs note that *McGee v. Purolator Courier Corp.*, 430 F. Supp. 1285, 1286–87 (N.D. Ala. 1977) distinguishes *Drew v. Liberty Mutual Insur. Co.*, 480 F.2d 69, 71-72 (5th Cir.1973). Doc. 3 at 7. In *McGee*, the court refused to award injunctive relief because the EEOC had not yet issued a right to sue notice. *McGee*, 430 F. Supp. at 1286–87. As this Court

is aware, no Plaintiff received a right to sue notice prior to commencing this case. Therefore, Plaintiffs have failed to identify a similar Eleventh Circuit case supporting their position that the administrative prerequisites are not an obstacle to preliminary injunctive relief.

Because Plaintiffs have not exhausted their administrative remedies, their Title VII and ADA claims cannot be asserted here.  For this reason alone, Plaintiffs cannot establish a likelihood of success on the merits of any Title VII or ADA claim.

> **2.    Plaintiffs Have Failed to Demonstrate that Their Title VII and ADA Claims Are Likely to Succeed on the Merits.**

Virtually every court that has taken up a challenge to require COVID-19 vaccinations has permitted private employers (and state employers) to require them. *See Harsman v. Cincinnati Children's Hospital Medical Center*, No. 1:21-cv-597, 2021 U.S. Dist. LEXIS 187841 (S.D. Ohio,  Sept. 30, 2021) (denying TRO to plaintiffs who objected to hospital's vaccine mandate); *Beckerich v. St. Elizabeth Med. Ctr., Inc.*, No. 2:21-cv-105, 2021 U.S. Dist. LEXIS 183757 (E.D.K.Y. Sept. 24, 2021) (denying TRO to plaintiffs who objected to hospital's vaccine mandate); *Bridges v. Houston Methodist Hosp.*, No. H-21-01774, 2021 U.S. Dist. LEXIS 110382 (S.D. Tex. June 12, 2021) (denying TRO to plaintiffs who objected to hospital's vaccine mandate); *Buckley v. The New York and Presbyterian Hospital*, No. 21-CV-7864, 2021 U.S. Dist. LEXIS 181135 (S.D.N.Y. Sept. 21, 2021) (denying temporary restraining order for hospital vaccination mandate); *Klaassen v.*

*Trustees of Indiana Univ.*, 7 F.4th 592 (7th Cir. 2021) (denying TRO to plaintiffs who objected to university's vaccine mandate); *Wade v. University of Connecticut*, No. 3:21-cv-924, 2021 U.S. Dist. LEXIS 153565 (D. Conn. Aug. 16, 2021) (dismissing vaccine mandate challenge for lack of jurisdiction); *Harris v. University of Massachusetts*, No. 21-cv-11244, 2021 U.S. Dist. LEXIS 162444 (D. Mass. Aug. 27, 2021) (denying preliminary injunction to plaintiffs who objected to university's vaccine mandate); *Valdez v. Grisham*, No. 21-cv-783, 2021 U.S. Dist. LEXIS 173680 (D.N.M. Sept. 13, 2021); *America's Frontline Doctors v. Wilcox*, No. EDCV 21-1243, 2021 U.S. Dist. LEXIS 144477 (C.D. Ca. July 30, 2021).

Moreover, Plaintiffs are not forced to receive a vaccination. *See Bridges*, 2021 U.S. Dist. LEXIS 110382 at *7 (Policy requiring employee to receive COVID-19 vaccination was not coercive because employee "can freely choose to accept or refuse a COVID-19 vaccine…if she refuses, she will simply need to work somewhere else."). *See also Doe v. Zucker*, No. 1:20-cv-840, 2021 U.S. Dist. LEXIS 28937, at *250-251 (N.D.N.Y. Feb. 17, 2021) (mandatory vaccination requirement does "not force…consent to vaccination"); *Klaassen*, 7 F. 4th at 593 (Upholding denial of injunction against university's COVID-19 vaccination requirement: "People who do not want to be vaccinated may go elsewhere").

Each of the affidavits attached to Plaintiffs' Motion (Breland, Creger, Norwood, Maine, and Eastman) state that the affiant filed an EEOC Charge

regarding religious discrimination. Docs. 3-1 at ¶18, 3-2 at ¶ 17, 3-3 at ¶ 23, 3-4 at ¶ 18, and 3-5 at ¶ 19. Breland's charge also claims disability discrimination. Doc. 3-1 at ¶18.  Employers do not have to accommodate religious beliefs or disabilities where doing so would create an undue hardship.  *Dalberiste v. GLE Assocs., Inc.*, 814 Fed. Appx. 495, 497 (11th Cir. 2020); *Willis v. Conopco, Inc.*, 108 F.3d 282, 286 (11th Cir. 1997) ("undue hardship is an affirmative defense to be pled and proven by an ADA defendant"). In the religious accommodation context, "undue hardship [is] any act requiring an employer to bear more than a *de minimis* cost in accommodating an employee's religious beliefs."  *Id*. at 498.  With regards to the ADA, undue hardship is defined as an action requiring significant difficulty or expense, when considered in light of the relevant factors. *See* 42 U.S.C. § 12111(10). "Where, as here, the proposed accommodation threatens to compromise safety in the workplace, the employer's burden of establishing an undue burden is light indeed." *Kalsi v. New York City Transit Authority*, 62 F. Supp.2d 745, 758 (E.D.N.Y. 1998), *aff'd*, 189 F.3d 461 (2d Cir. 1999); *E.E.O.C. v. Oak-Rite Mfg. Corp.*, 2001 U.S. Dist. LEXIS 15621, at *43 (S.D. Ind. Aug. 27, 2001) (risk of state OSHA fines or workers compensation claim created undue hardship).

Given the threat that COVID-19 poses to the health and safety of Defendant's employees and visitors it is almost certain that Defendant can establish an undue hardship.  *See, e.g., Robinson v. Children's Hosp. Bos.*, Civil Action No. 14-10263-

DJC, 2016 U.S. Dist. LEXIS 46024, at *28 (D. Mass. Apr. 5, 2016) (Denying the plaintiff's failure to accommodate claim under Title VII where granting the plaintiff's religious exemption request "would have been an undue hardship because it would have increased the risk of transmitting influenza to its already vulnerable patient population."); *EEOC v. Mission Hosp., Inc.*, 2017 U.S. Dist. LEXIS 124183, at *8 (W.D. N.C. 2017) ("If the hospital's other health care staff or patients suffered hospital-borne infectious disease, such an infection would increase costs to the hospital."); *Barrington*, 2021 U.S. Dist. LEXIS 201633 at *10 (denying injunctive relief in COVID-19 vaccine case because of likelihood of undue hardship where there was a possibility that the unvaccinated employees could expose co-workers to heightened risk of COVID-19).

Thus, even if Plaintiffs were denied a religious or disability accommodation, under Defendant's COVID-19 Vaccine Policy and federal mandates, a failure to accommodate claim under Title VII or the ADA most likely will not survive an undue hardship defense.[3]

### 3.  Plaintiffs Have Failed to Demonstrate that Their Claims are Likely to Succeed under Alabama Act 2021-561.

The above arguments create grounds to deny Plaintiffs' Motion and abrogate the need to consider Plaintiffs' arguments based on Alabama Act 2021-561.

---

[3] In any event, as noted above, any evaluation of such a claim must be made in the first instance by the EEOC after the filing of an administrative charge.

However, Plaintiffs' Motion fails to note that Defendant is a federal government contractor.[4] Questions regarding whether federal mandates supersede Alabama Act 2021-561 are yet to be determined. Guidance from the Safer Federal Workforce Task Force ("Task Force") indicates that state laws are preempted.

On September 9, 2021, President Biden issued two executive orders addressing COVID-19 vaccination requirements for federal employees and contractors. *See* Exec. Order 14043, 86 Fed. Reg. 50,989 (Sept. 14, 2021) (civilian federal employees); Exec. Order 14042, 86 Fed. Reg. 50,985 (Sept. 14, 2021) (federal contractors).

The President issued EO 14042 to "promote[] economy and efficiency in Federal procurement by ensuring that the parties that contract with the Federal Government provide adequate COVID-19 safeguards to their workers performing on or in connection with a Federal Government contract or contract-like instrument." 86 Fed. Reg. at 50,985. The President determined that new safeguards would "decrease worker absence, reduce labor costs, and improve the efficiency of contractors and subcontractors at sites where they are performing work for the Federal Government." *Id*. EO 14042 directs federal executive departments and agencies, "to the extent permitted by law," to include in qualifying contracts a clause requiring compliance with workplace safety guidance issued by the Task Force. *Id*.;

---

[4] Plaintiffs also fail to note that no private cause of action exists under Alabama Act 2021-561.

*see also id.* at 50,986-50,987 (listing the categories of contracts to which the EO applies).

The Task Force issued safety guidance on September 24, 2021. Task Force, COVID-19 Workplace Safety: Guidance for Federal Contractors and Subcontractors, https://perma.cc/6DRV-LV2Q ("Contractor Guidance"). That guidance, which the Office of Management and Budget approved pursuant to the Executive Order, https://perma.cc/CL8P-YV5B, requires that covered contractor and subcontractor employees receive a COVID-19 vaccination, except insofar as any such employee is legally entitled to an accommodation. *Id*. Moreover, the Task Force provides the following guidance:

> Q19: Does this clause apply in States or localities that seek to prohibit compliance with any of the workplace safety protocols set forth in this Guidance?
>
> A: Yes. These requirements are promulgated pursuant to Federal law and supersede any contrary State or local law or ordinance. Additionally, nothing in this Guidance shall excuse noncompliance with any applicable State law or municipal ordinance establishing more protective workplace safety protocols than those established under this Guidance.

*Id.* Plaintiffs' Motion fails to address any of these issues related to the interplay between the federal mandates and Alabama Act 2021-561. As such, Plaintiffs' Motion fails to show a likelihood of success on the merits pursuant to Alabama Act 2021-561.

**C.** **Restraining Defendant Will Harm Others and Is Not in the Public's Interest**

Enjoining Defendant from taking appropriate action to address the COVID-19 pandemic has the potential to create substantial harm to the public, including Defendant's employees and visitors. Courts across the nation have stressed the deadliness of the virus and the obvious interest in stopping its spread. *See, e.g.*, *Zinman v. Nova Southeastern Univ.*, No. 21-CIV-60723, 2021 U.S. Dist. LEXIS 92180, at **10-11 (S.D. Fl. May 14, 2021) (denying TRO for event and masking requirements, noting that measures to slow the spread of COVID-19 "serve the public interest of protecting human life and health in the face of a global and unpredictable pandemic"); *Barrington*, 2021 U.S. Dist. LEXIS 201633 at **22-24 (the public interest would be harmed by the issuance of injunctive relief because ending the COVID-19 is in the collective best interest and vaccines can reduce the risk of spreading COVID-19); *League of Indep. Fitness Facilities & Trainers, Inc. v. Whitmer*, 814 Fed. Appx. 125, 129-30 (6th Cir. 2020) (staying injunction granted by district court; the interest in combatting COVID-19 and potential for additional infection trump any alleged harm suffered by plaintiffs); *Beckerich*, 2021 U.S. Dist. LEXIS 183757 at *20 ("No matter any individual stance on COVID-19, every person, including the parties in this case, can agree that ending the COVID-19 pandemic is in our collective best interest—and in the public's best interest, as well, for purposes of balancing equities.").

The same is true here.  The potential harm to third parties and the public's interest outweigh any interest asserted by Plaintiffs and compel denial of injunctive relief.  *See, e.g.*, *Altman v. Santa Clara*, 464 F. Supp. 3d 1106, 1134 (N.D. Cal. 2020) ("[T]he public's interest in controlling the spread of COVID-19 outweighs its interest in preventing the constitutional violations alleged here, especially given that Plaintiffs have failed to establish a likelihood of success on the merits."); *Bridges v. Houston Methodist Hospital*, No. H-21-1774, Order Denying Temporary Restraint (Doc. 10) (S.D. Tex. June 4, 2021) ("The public's interest in having a hospital capable of caring for patients during a pandemic far outweighs protecting the vaccination preferences of 116 employees.  The plaintiffs are not just jeopardizing their own health, they are jeopardizing the health of doctors, nurses, support staff, patients and their families."); *Klaassen*, 7 F.4th 592 (denying TRO finding that students' refusal to get vaccinated, while also not complying with heightened safety precautions, "certainly impacts the public interest" by putting others at risk); *Harris*, 2021 U.S. Dist. LEXIS 162444 at *22-23 ("[T]he balance of equities tips in Defendant's favor given the strong public interest here that they are promoting – preventing further spread of COVID-19 on campus, a virus which has infected and taken the lives of thousands of Massachusetts residents.  Plaintiffs' requested relief here would weaken the efforts of UMass to carry out those goals.  Similarly, given the public health efforts promoted by the Vaccine Policy, enjoining the continuation

of same is not in the public interest."); *Harsman*, 2021 U.S. Dist. LEXIS 187841, at *14 (In COVID-19 vaccine mandate case: "there is no question that balancing the equities requires the Court to deny Plaintiffs' motion.  Denying injunctive relief serves the public's interest in combating COVID-19, at an infinitesimally small risk to Plaintiffs' health or liberty"); *Beckerich*, 2021 U.S. Dist. LEXIS 183757 at **24-25, citing *Jacobson* 197 U.S. at 35 ("if legislative action to prevent the spread of contagious disease must be upheld, even in spite of doubt – and in spite of individual liberties – then private action must be upheld too...."). Because the requested injunction would impair the interests of third parties and the public at large, Plaintiffs' Motion must be denied.

### D.    Plaintiffs' Delay in Pursuing this Action Belies the Need for Emergency Relief

Temporary restraining orders and preliminary injunctions amount to emergency measures.  One factor a court must consider in determining whether to grant a request for emergency relief is the imminence of the potential harm.  *Saintlot*, 2020 U.S. Dist. LEXIS 247891 at *3 (*internal citations omitted*) ("The injury must be neither remote nor speculative, but actual and imminent"). Plaintiffs knew about Defendant's vaccination requirement in August of 2021. Doc. 3 at 4. Plaintiffs, however, delayed until November 12, 2021[5] before filing this lawsuit. Plaintiffs do

---

[5]  Plaintiffs may argue they could not file this lawsuit while their requests for accommodation remained pending before ULA.  However, Plaintiff Creger states his accommodation request was denied by at least October 22, 2021; Plaintiffs Eastman and Norwood state their appeals were

not allege that Defendant even received the purported EEOC Charges prior to the filing of Plaintiffs' Motion.

Plaintiffs' delay in filing this action demonstrates that there is no basis for an emergency temporary restraining order.  Plaintiffs' lack of diligence in pursuing these claims precludes them from now seeking an emergency temporary restraining order.  *Wreal, LLC v. Amazon.com*, 840 F.3d 1244, 1248 (11th Cir. 2016) ("A delay in seeking a preliminary injunction of even only a few months – though not necessarily fatal – militates against a finding of irreparable harm.").

## V.   **CONCLUSION**

For all of the foregoing reasons, Plaintiffs' Motion for Temporary Restraining Order and/or Preliminary Injunction must be denied.

Respectfully submitted this 16th day of November, 2021.

> */s/ Thomas A. Davis*
> Thomas A. Davis (ASB-5877-S56T)
> Thomas.Davis@jacksonlewis.com
> Direct Dial:  205-332-3101
> Tammy L. Baker (ASB- 9522-B62T)
> Tammy.Baker@jacksonlewis.com
> Direct Dial:  205-332-3106
> Shannon L. Miller (ASB- 8026-R60S)
> Shannon.Miller@jacksonlewis.com
> Direct Dial: 205-332-3102

---

denied on November 4, 2021; and Plaintiff Maine states her accommodation request was denied on October 27, 2021 (Plaintiff Breland does not state when he received notice of the denial).  Doc. 3 at 2-6.  Therefore, Plaintiffs were aware of ULA's decision for anywhere from 8 days to 3 weeks before they filed the Motion.

Michael C. Guarino (ASB-0441-V18D)
Michael.Guarino@jacksonlewis.com
Direct Dial:  205-332-3096
**JACKSON LEWIS P.C.**
Synovus Center
800 Shades Creek Parkway, Suite 870
Birmingham, Alabama  35209
Facsimile:  205-332-3131

***Attorneys for Defendant***

## CERTIFICATE OF SERVICE

I hereby certify that on this the 16th day of November, 2021, a true and correct copy of the foregoing has been served via the Court's CM/ECF filing system as follows:

Matthew J. Clark, Esq.
**ALABAMA CENTER FOR LAW & LIBERTY**
2213 Morris Avenue
Birmingham, AL  35203
matt@alabamalawandliberty.org

John C. Eastman, Esq.
**CONSTITUTIONAL COUNSEL GROUP**
174 W. Lincoln Avenue, #620
Anaheim, CA  92805
jeastman@ccg1776.com

*/s/ Thomas A. Davis*
Of Counsel

4856-4907-7251, v. 2