FILED
2021 Nov-19  PM 10:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

| | |
|---|---|
| HUNTER CREGER, *et al.*, | Civil Action No.: |
| *Plaintiffs,* | 5:21-cv-01508-AKK |
| v. | |
| UNITED LAUNCH ALLIANCE, LLC; | |
| *Defendant*. | |

**PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION**

## I.    INTRODUCTION

Defendant United Launch Alliance ("ULA") tries to minimize this dispute as "just a disagreement over an employer's policy." It is not, as rights guaranteed by federal statute as well as Alabama law are at issue.  But its claim that this is simply about "enforcement of *its* vaccine policy" certainly undermines its later assertion that, as a federal contractor, it was obligated to impose its draconian vaccine policy.  The federal government itself has not attempted to impose an across-the-board vaccine mandate while simultaneously rejecting *all* claims for religious or medical accommodation. ULA's draconian imposition of a vaccine mandate without accommodation therefore exceeds even the expansive mandate imposed by the federal government (a portion of which has already been enjoined by the Fifth Circuit Court of Appeals), and it has already imposed (and will continue to impose) irreparable injuries on the named plaintiffs and the putative class they seek to represent.  Plaintiffs request for a preliminary injunction while their significant claims under both federal and Alabama law are considered on the merits should be granted. After all, preliminary injunctions are supposed to "preserve the relative positions of the

parties until a trial on the merits can be held." *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

## II.   Plaintiffs Have Alleged Irreparable Injury

Plaintiffs agree that "monetary loss" alone is usually insufficient to meet the "irreparable injury" requirement for preliminary injunctive relief.  Although that rule is not absolute—several courts have held that monetary loss may constitute "irreparable injury" in some circumstances, *see, e.g., Lee v. Christian Coalition of America*, 160 F.Supp.2d 14, 31–32 (D.D.C.2001) (finding of "irreparable harm" where the plaintiffs were so poor that the loss of wages would result in insolvency, eviction, or difficulty in obtaining food)—the Plaintiffs here have each alleged non-monetary, non-speculative harms that qualify as irreparable.

Most fundamentally, ULA's denial of accommodation requests has placed each of the named plaintiffs, as well as the members of the putative class, in an untenable position—either violate their religious conscience in order to keep a paycheck or suffer what the Supreme Court has described as the "serious hardship" of going without a paycheck for even a month, *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 72 (2006).

The lower courts dealing with COVID vaccine mandates are all over the map on whether this qualifies as "irreparable injury."  On November 1, 2021, the District Court for the Northern District of Illinois entered a temporary restraining order (after briefing and argument), explicitly finding that, "on the issue of irreparable harm and inadequate remedy at law, Plaintiffs made a showing that they may suffer irreparable harm for which money damages are not adequate pending a hearing on the motion for preliminary injunction, given the choice to be vaccinated against their religious beliefs or potentially lose their employment." *Jane Does 1-14*, *on their own behalf & on behalf of all others similarly situated v. Northshore University Healthsystem*, No. 21-

CV-05683, 2021 WL 5119751, at *1 (N.D. Ill. Nov. 1, 2021).  On October 12, 2021, the District Court for the Northern District of Texas granted a TRO to United Airlines employees on similar reasoning, holding that it was necessary "to avoid risking irreparable injury and to maintain the status quo in this case pending the Court's hearing and resolution of Plaintiffs' Motion for Preliminary Injunction."  Temporary Restraining Order, *Sambrano v. United Airlines*, No. 4:21-cv-1074 (N.D. Tex. Oct. 12, 2021). But the court then reversed course and denied a preliminary injunction on November 8, finding no irreparable injury.  Opinion and Order [Denying Preliminary Injunction], *Id.* (Nov. 8, 2021).  Similarly, on September 14, 2021, the District Court for the Northern District of New York granted a TRO against the New York Department of Health's vaccine mandate for health care workers that did not allow for religious exemptions, finding that "irreparable harm" was demonstrated because Plaintiffs had shown a likelihood of success on the merits of their claim that the mandate infringed their First Amendment freedom of religion. *Dr. A. v. Hochul*, No. 1:21-CV-1009, 2021 WL 4189533, at *1 (N.D.N.Y. Sept. 14, 2021).  The TRO was then converted to a Preliminary Injunction on October 12, 2021.  *Id.*, 2021 WL 4734404, at *11 (N.D.N.Y. Oct. 12, 2021), but that was subsequently vacated and remanded by the Second Circuit, on the ground that Plaintiffs had failed to demonstrate likelihood of success on the merits and therefore, the presumption of irreparable injury from constitutional violations was not available.  *Sub nom. We the Patriots USA, Inc. v. Hochul*, No. 21-2179, 2021 WL 5103443 (2d Cir. Oct. 29, 2021), *opinion issued*, 2021 WL 5121983 (2d Cir. Nov. 4, 2021), *opinion clarified by* 2021 WL 5276624 (2d Cir. Nov. 12, 2021).

In contrast to the Second Circuit, the Sixth Circuit *upheld* (by denying a stay pending appeal) a preliminary injunction against the University of Wisconsin's vaccine mandate, affirming the district court's holding not only a likelihood of success on the merits but "an irreparable injury." *Dahl v. Bd. of Trustees of W. Michigan Univ.*, 15 F.4th 728, 730, 736 (6th Cir. Oct. 7,

2021), *denying stay pending appeal* Order Granting Motion for Temporary Restraining Order, No. 1:21-cv-757, 2021 WL 3891620 (W.D. Mich. Aug. 31, 2021).  And the District Court for the Western District of Louisiana has likewise granted a temporary restraining order (subsequently made permanent by a consent judgment), holding that Plaintiffs had demonstrated a likelihood of success on the merits of their constitutional claims and also "irreparable harm because of their inability to complete curriculum requirements, disclosure of their "unvaccinated" status, and excessive restrictions."  *Magliulo v. Edward Via Coll. of Osteopathic Med.*, No. 3:21-CV-2304, 2021 WL 3679227, at *9 (W.D. La. Aug. 17, 2021).[1] *Cf. Geneva College v. Sebelius*, 988 F.Supp.2d 511 (W.D.Pa. 2013) (holding that private, nonprofit college would be irreparably harmed if forced either to forgo providing employee health insurance coverage or to violate its sincerely held religious beliefs), *reversed sub nom.*, *Geneva Coll. v. Sec'y U.S. Dep't of Health & Hum. Servs.*, 778 F.3d 422 (3d Cir. 2015), *vacated and remanded sub nom.*, *Zubik v. Burwell*, 578 U.S. 403 (2016).

Plaintiffs have also alleged other harms that courts have deemed "irreparable."  Plaintiff Eastman has alleged that the loss of his position with ULA will render him ineligible for a mortgage at the very time he and his pregnant wife are trying to purchase their first home. Eastman Aff. ¶ 26.[2] Eastman will therefore lose the opportunity to purchase any of the properties that come on the market during the time of his unemployment. "[G]iven the unique nature of land, it is well established that money damages to a purchaser of land is inadequate." *In re Gen. Dev. Corp.*, 84 F.3d 1364, 1370 (11th Cir. 1996); *see also Occidental Chem. Corp. v. Bullard*, 995 F.2d

---

[1] *Dr. A, Dahl,* and *Magliolo* all involve claims against the state for violating First Amendment rights.  Although the "irreparable injury" analysis is somewhat different in constitutional cases, all involved protections of religious beliefs that Title VII affords in the context of non-government private employers.

[2] In its order denying a TRO, this Court noted that neither Eastman's loss of wages or his loss of eligibility for a mortgage "cannot be undone through monetary remedies." Although Plaintiffs had previously asserted that the loss of mortgage eligibility is "not easily redressed by damages," Memo. at 20, they elaborate here on how the loss of mortgage eligibility affects "unique" properties, and therefore qualifies as "irreparable."

1046, 1048 (11th Cir. 1993) (describing the "unique value" of an individual parcel); *Mitchell v. Century 21 Rustic Realty*, 233 F.Supp.2d 418 (E.D.N.Y.2002) ("Loss of an interest in real property is generally considered irreparable harm"), *aff'd*, 45 F. App'x 59 (2d Cir. 2002); *cf. Restatement of Contracts* 2d § 360 cmt. e (1981) ("A specific tract of land has long been regarded as unique and impossible of duplication by the use of any amount of money").  Moreover, as the Alabama Association of Realtors recently described, the housing market in Alabama over the past year (during which Eastman and his wife have been in the housing market, Eastman Aff. ¶ 26) has been particularly overheated, with "a home-buying spree with record-setting prices" prompted by the COVID pandemic, "the lowest housing inventory…in history," and "months of extraordinary competition among buyers."[3] The Alabama Association of Realtors predicts a "seasonal slowdown" such that "winter will give everyone a chance to catch their breath"—the very window of opportunity that will be foreclosed to Eastman with his unemployment-induced loss of mortgage eligibility. By the time the EEOC process runs its course (not to mention any subsequent litigation that may be necessary), that window will have closed.  Eastman's loss of mortgage eligibility is therefore an irreparable injury that cannot be remedied by after-the-fact monetary damages.

Plaintiff Creger is confronted with a similar irreparable injury. Prior to ULA's policy announcement and his pending termination, he had purchased land in Falkville, Alabama, on which he planned to build a home. He had already begun preparing the land for construction, obtained a construction bid, and initiated plans to obtain financing for the construction.  Creger Supp. Aff. ¶¶ 1-8.  Without his ULA income, he had to suspend those plans, and is now at great risk of losing the land altogether because he has no income with which to make the $543.67

---

[3] *See, e.g.,* Alabama Association of Realtors, "Is the Market Cooling With the Temps" (Nov. 16, 2021). This Court can take judicial notice of housing market trends. *S.E.C. v. Kirkland*, No. 6:06-CV-183, 2008 WL 1787234, at *5 n.5 (M.D. Fla. Apr. 11, 2008).

monthly payment on the $65,786 loan he took out to purchase the land.  *Id.* at ¶¶ 2-3, 8-10.

Because "a piece of real property is unique," the threatened imminent loss of that property is itself

an irreparable harm. *Davis v. Wayne Cty. Cmty. Coll. Dist.*, No. 19-CV-12488, 2020 WL

3605066, at *6 (E.D. Mich. July 2, 2020) (citing *Sayo, Inc. v. Zions First Nat. Bank*, No. 06-CV-

14963 DT, 2006 WL 3240706, at *2 (E.D. Mich. Nov. 7, 2006).  The Seventh and Ninth Circuits

have both similarly held that, in the face of foreclosure on a land mortgage, the "irreparable

injury" requirement for injunctive relief is met "[s]ince the property at issue is unique." *Sundance

Land Corp. v. Cmty. First Fed. Sav. & Loan Ass'n*, 840 F.2d 653, 661 (9th Cir. 1988); *United

States v. Davenport*, 106 F.3d 1333, 1335 (7th Cir. 1997) (holding that "the possibility of

irreparable harm is plain" when faced with the immediate sale "of a unique parcel of land").

Although several courts have required that the foreclosure be "imminent," *see*, *e.g.*, *Mosley v.

Margalis*, No. 1:14-cv-00934, 2014 WL 12748834, at *5 (N.D. Ohio May 12, 2014), the Northern

District of Illinois granted preliminary injunctive relief to truck drivers "confronting *potential*

mortgage foreclosure as well as serious difficulties in sustaining the needs of every day life,"

because those circumstances "cannot be fully redressed by an award of monetary damages in the

future."  *Truck Drivers, Oil Drivers, Filling Station & Platform Workers, Loc. 705, Int'l Bhd. of

Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Almarc Mfg., Inc.*, 553 F. Supp. 1170,

1173-74 (N.D. Ill. 1982) (emphasis added). Both *Santos v. Columbus-Cuneo-Cabrini Medical

Center*, 684 F.2d 1346 (7th Cir.1982), and *Sampson v. Murray*, 415 U.S. 61 (1974), it added, "by

using the term 'usually,' imply that there are situations in which a temporary loss of income *can*

meet the irreparable injury test." *Truck Drivers*, 553 F.Supp. at 1174 (citing *Gonzalez v. Chasen,*

506 F.Supp. 990, 998 (D.P.R.1980); *Sockwell v. Maloney,* 431 F.Supp. 1006, 1012

(D.Conn.1976); *Becker v. Toia,* 439 F.Supp. 324, 336 (S.D.N.Y.1977); *Caulk v. Beal,* 447 F.Supp.

44, 52 (E.D.Pa.1977)).  *See also Omega v. Wells Fargo & Co.*, No. C 11-02621 JSW, 2012 WL

685440, at *12 (N.D. Cal. Mar. 2, 2012); *Mandrigues v. World Savings, Inc.,* 2009 WL 160213 at *3 (N.D.Cal. Jan.20, 2009) ("foreclosure under certain circumstances may constitute irreparable harm"); *Nichols v. Deutsche Bank Nat. Trust Co.,* 2007 WL 4181111 at *2 (S.D.Cal. Nov. 7, 2007).

Plaintiffs Maine, Eastman, Breland, and Norwood all alleged that loss of medical insurance benefits would be particularly problematic for them. Breland described it as "very traumatic" for him and his family. Breland Aff. ¶ 19.  Norwood's 9-month-old daughter has "two congenital heart defects that will require consistent medical evaluation," "so the loss of health insurance benefits will be particularly burdensome" for him.  Norwood Aff. ¶¶ 22-23. Eastman's "wife is in her second trimester of pregnancy with [their] first child, so the loss of health insurance benefits will be particularly burdensome for" him.  Eastman Aff. ¶ 25.  And Maine's husband is eligible for permanent disability.  Maine Aff. ¶ 21.  Until this dispute with ULA arose, Maine and her husband had planned for him to go on permanent disability, which would end his existing employer-sponsored health insurance.  He would then be added to Maine's health insurance plan through ULA.  Maine Supp. Aff. ¶¶ 4-5. But if Maine loses her position at ULA and, hence, her health insurance, they will not be able to pursue that plan, and her husband will have to delay taking his permanent disability for which he is eligible.  Maine Supp. Aff. ¶¶ 5, 7-8.

"'[T]he loss of health insurance benefits where there is a serious immediate or ongoing need for medical treatment" may be sufficient to support a finding of irreparable injury sufficient to support preliminary injunction." *Welch v. Brown*, 935 F. Supp. 2d 875, 888 (E.D. Mich. 2013), *aff'd*, 551 F. App'x 804 (6th Cir. 2014) (quoting S*tate Emps. Ass'n v. Dep't of Mental Health*, 421 Mich. 152, 365 N.W.2d 93, 101 n. 10 (1984)).  Similarly, Justice Breyer, when he was still a Circuit Judge on the First Circuit Court of Appeals, had "no difficulty finding" a preliminary injunction valid, when a company ceased paying medical insurance premiums for its previously

covered retired employees because, based on "general facts that either are commonly believed or

which courts have specifically held to show irreparable harm," namely, "(1) most retired union

members are not rich, (2) most live on fixed incomes, (3) many will get sick and need medical

care, (4) medical care is expensive, (5) medical insurance is, therefore, a necessity, and (6) some

retired workers may find it difficult to obtain medical insurance on their own while others can pay

for it only out of money that they need for other necessities of life." *United Steelworkers of Am.,*

*AFL-CIO v. Textron, Inc.*, 836 F.2d 6, 8 (1st Cir. 1987) (citing cases).  The Second Circuit

affirmed a preliminary injunction blocking the termination of medical benefits for workers on

strike, holding that "the threatened termination of benefits such as medical coverage for workers

and their families obviously raised the spectre of irreparable injury."  *Whelan v. Colgan*, 602 F.2d

1060, 1062 (2d Cir. 1979); *see also Commc'ns Workers of Am., Dist. One, AFL-CIO v. NYNEX

Corp.*, 898 F.2d 887, 891 (2d Cir. 1990) ("In this circuit, the threat of termination of medical

benefits to striking workers has been held to constitute irreparable harm," citing *Whelan*); *Kelly v.

Honeywell Int'l, Inc.*, 933 F.3d 173, 184 (2d Cir. 2019) (same).

     Moreover, as at least one district court has held, the court "can reasonably infer that the

harms faced by the declarants are representative of prospective class members generally."  *Angotti

v. Rexam, Inc.*, No. C 05-5264 CW, 2006 WL 1646135, at *16 (N.D. Cal. June 14, 2006); *see also

Adams v. Freedom Forge Corp.*, 204 F.3d 475, 487 (3d Cir. 2000) (acknowledging, as a valid

example of inductive reasoning, that "resting a preliminary injunction for many on the testimony

of a few … is not inappropriate so long as the plaintiffs lay an adequate foundation from which

one could draw inferences that the testifying plaintiffs are similarly situated—in terms of

irreparable harm—to all the other plaintiffs," but distinguishing as invalid an approach that treats

each individual as merely part of an aggregate); *LaForest v. Former Clean Air Holding Co.*, 376

F.3d 48, 55-57 (2d Cir. 2004) (affirming preliminary injunction on behalf of putative class,

mandating that employer's successor continue paying insurance premiums for retiree health insurance, based on district court's finding that, absent injunction, reductions in medical coverage would cause substantial risk to retirees' health, severe financial hardship, inability to purchase life's necessities, and anxiety associated with uncertainty.).

Plaintiffs Creger, Eastman, Maine, and Norwood also asserted difficulty in finding employment elsewhere, which exacerbates the financial hardship as well as the stress and trauma ULA's refusal to grant accommodations has engendered.  Creger, Eastman, and Norwood each alleged that they have been trying, unsuccessfully, to find other employment since ULA's policy was first announced in August. Creger Aff. ¶ 19; Eastman Aff. ¶ 27; Norwood Aff. ¶ 24.  And Maine alleged that "At my age, new employment will be difficult to find in my area of expertise. A comparable compensation would be improbable as over the 14+ years dedicated to ULA, I have grown into top compensatory range." Maine Aff. ¶ 20.

Although such difficulties admittedly do not *normally* constitute irreparable harm, these are not normal times.  As the District Court for the District of Columbia recently recognized, "the difficulties in obtaining a new job are exacerbated by the current public health emergency related to COVID-19."  *Acosta v. D.C. Gov't*, No. CV 20-1189 (RC), 2020 WL 2934820, at *4, n.3 (D.D.C. June 3, 2020). The court rejected plaintiff's claim of irreparable injury in the case because she had "just begun her job search and, thus, her claim of being unemployable does not rise beyond a speculative level."  *Id.*  Plaintiffs here have each alleged that they have already been seeking other employment for months, to no avail.  And in some circumstances, the loss of employment *does* qualify as irreparable harm.  *See, e.g.*, *Am. Fed'n of Lab. v. Chertoff*, 552 F. Supp. 2d 999, 1007 (N.D. Cal. 2007) (enjoining implementation of DHS "Safe-Harbor" rule, based on finding that employees would be "irreparably harmed" because "there is a strong likelihood that employers may simply fire employees who are unable to resolve the discrepancy

within 90 days, even if the employees are actually authorized to work.").  Here, of course, there is more than a "likelihood" that ULA will terminate Plaintiffs; some have already been terminated, and others are almost certain to be terminated just as soon as the union grievance process runs its courts.

### III.   Plaintiffs Have Demonstrated Likelihood of Success on Each of Their Claims

#### A.   Exhaustion of EEOC's Administrative Review is not a Jurisdictional Prerequisite to Temporary Injunctive Relief.

ULA asserts the categorical position that actions under Title VII and the ADA are barred unless the plaintiff has filed "an EEOC complaint against the discriminating party **and receive[d] statutory notice from the EEOC of his right … to sue.**"  Def's Opp. at 9 (emphasis in original). But that categorical claim fails to distinguish between actions seeking a final decision on the merits, and those, such as this, seeking only interim relief to protect the status quo while the administrative process plays out.  As Plaintiffs pointed out in their opening brief, controlling precedent from the old Fifth Circuit has allowed actions for interim relief in such circumstances. *Drew v. Liberty Mutual Ins. Co.*, 480 F.2d 69 (5th Cir. 1972).  As that court noted, all that "the plaintiff sought here was temporary relief to prevent irreparable injury while the Commission carried on its function of negotiating and conciliating."  *Id.* at 73.

Although in *McGee v. Purolator Courier Corp.*, 430 F. Supp. 1285, 1286-87 (N.D. Ala. 1977), this court purported to distinguish *Drew* on the ground that EEOC had issued a right to sue letter by the time of the preliminary injunction hearing, that was not the basis of the Fifth Circuit's holding in *Drew*.  Indeed, as that court specifically noted, if it concluded "that the Drew complaint, *at the time it was filed*, … was properly in the district court," then it would require remand to allow for an award of attorneys fees for the successful service they performed.  *Drew*, 480 F.2d at 72 (emphasis added).  That, of course, is precisely what the court ordered.

But even if *Drew* could be distinguished on the grounds claimed in *McGee*, the district court in *McGee* also rejected the old Fifth Circuit's controlling decision in *Parks v. Dunlop*, 517 F.2d 785, 787 (5th Cir. 1975), where no such distinction existed.  A district court does not have the authority to render a judgement that disapproves of controlling circuit precedent.  Perhaps that is why the District Court for the Middle District of Alabama has subsequently recognized that "Under the current state of the law, a plaintiff may seek preliminary relief to preserve the availability of a position *even before the Equal Employment Opportunity Commission has issued a right-to-sue letter* and while her administrative claim is still pending before the Commission." *Hicks v. Dothan City Bd. of Educ.*, 814 F. Supp. 1044, 1052 (M.D. Ala. 1993) (emphasis added, citing *Drew*). ULA's effort to distinguish *Hicks* on the ground that the irreparable injury in that case involved a promotion to a position "that rarely became available" is misplaced, because whether irreparable harm is established goes to the availability of injunctive relief as a remedy, not to whether the court has jurisdiction to consider such relief.

### B. Plaintiffs Have Demonstrated Likelihood of Success on Their Claims that ULA's Denial of All Religious and Most Medical Accommodations Claims Violate Title VII and the ADA.

With respect to the preliminary injunction requirement that a plaintiff establish a likelihood of success on the merits, ULA cites a litany of cases that denied temporary restraining orders, but where, as here, the merits issue turns on whether *the employer* has established an undue burden for denying religious and medical accommodations,[4] the assessment is fact specific and "must be determined on a case-by-case basis."  *Morrissette-Brown v. Mobile Infirmary Med. Ctr.*, 506 F.3d 1317, 1322 (11th Cir. 2007).  So a finding that a plaintiff in another case was unlikely to succeed on the merits in one context is fairly irrelevant in other contexts.  Moreover,

---

[4] ULA has acknowledged that Plaintiffs' claims for religious accommodation were all based on sincerely-held religious beliefs.

all of the cases ULA cites are readily distinguishable on the likelihood of success issue for other

reasons as well.  Several of the cases involved constitutional claims against non-state actors, so

had no prospect of success on the merits with respect to those claims.  *Harsman v. Cincinnati*

*Children's Hosp. Med. Ctr.*, No. 1:21-CV-597, 2021 WL 4504245, at *3 (S.D. Ohio Sept. 30,

2021); *Beckerich v. St. Elizabeth Med. Ctr.*, No. CIV 21-105-DLB-EBA, 2021 WL 4398027, at *3

(E.D. Ky. Sept. 24, 2021) ("Plaintiffs' likelihood of success on the merits of their constitutional

claims is virtually nonexistent").  Others, like *Klaassen v. Trustees of Indiana Univ.*, 7 F.4th 592

(7th Cir. 2021), *Wade v. University of Connecticut*, No. 3:21-cv-924, 2021 U.S. Dist. LEXIS

153565 (D. Conn. Aug. 16, 2021), *Am.'s Frontline Drs. v. Wilcox*, No. EDCV21-1243, 2021 WL

4546923 (C.D. Cal. July 30, 2021), and *Valdez v. Grisham*, No. 21-CV-783, 2021 WL 4145746

(D.N.M. Sept. 13, 2021), involved Due Process and other constitutional challenges to vaccine

mandates themselves, not a denial of religious or medical accommodations under Title VII and the

ADA.[5]  Indeed, the challenge in *Wade* was rendered moot with respect to two of the three

plaintiffs when the University granted their exemption requests, and dismissed for lack of standing

on the part of the remaining plaintiff because she had not applied for an exemption.  And although

the *Wilcox* plaintiffs challenged the denial of medical exemption under state law (as well as the

U.S. Constitution), those claims were dismissed on sovereign immunity grounds without reaching

the merits.

The plaintiff in *Harris v. Univ. of Massachusetts, Lowell*, No. 21-CV-11244, 2021 WL

3848012, at *7 (D. Mass. Aug. 27, 2021), did challenge her denial of a religious exemption in her

suit otherwise raising constitutional Due Process claims, but that exemption claim was based on

the First Amendment, not Title VII.  It is therefore also distinguishable.

---

[5] The same is true of the *pro se* complaint in *Buckley v. The New York and Presbyterian Hospital*, No. 21-CV-7864,
2021 U.S. Dist. LEXIS 181135 (S.D.N.Y. Sept. 21, 2021), and the complaint in *Bridges v. Houston Methodist Hosp.*,
No. H-21-01774, 2021 U.S. Dist. LEXIS 110382 (S.D. Tex. June 12, 2021). Neither involved requests for
accommodation.

The *Harsman* court also noted Defendants in that case had granted "*hundreds* of religious and medical exemptions." The same was true in *Beckerich*, where Defendants had granted either full exemptions or deferments to 75% of the employees who had requested medical exemptions, and "none of the Plaintiffs … had been denied a religious exemption." 2021 WL 4398027 at *4, *5. Plaintiffs here, in stark contrast, have alleged that ULA denied *all* of the religious accommodation claims and most of the medical accommodation claims. Complaint ¶¶ 35, 37.

In short, none of the cases relied on by Defendant demonstrate that Plaintiffs here are unlikely to succeed on the merits of their Title VII and ADA claims. The issue in dispute here is whether ULA can meet its burden to demonstrate that it "is unable to reasonably accommodate an employee's … religious observance or practice without undue hardship on the conduct of the employer's business." *Morrissette-Brown v. Mobile Infirmary Med. Ctr.*, 506 F.3d 1317, 1321 (11th Cir. 2007) (quoting 42 U.S.C. § 2000e(j). The only argument ULA offers on that score is that, "[g]iven the threat that COVID-19 poses to the health and safety of Defendant's employees and visitors it is almost certain that Defendant can establish an undue hardship." Def. Opp. at 13-14. But both Title VII and the ADA require more than just *ipse dixit*. They require that an employer engage in an interactive process with employees to determine whether reasonable accommodations exist that would not impose an undue burden on the employer. *Chandler v. Infinity Ins. Grp.*, No. 2:12-CV-2870-TMP, 2014 WL 2547826, at *7 (N.D. Ala. June 4, 2014); *see also EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 621 (5th Cir. 2009). Reasonable accommodations clearly exist here. Several of the Plaintiffs have been working remotely and could continue to do so, for example, without imposing any burden, much less an undue burden, on ULA. Eastman Aff. ¶¶ 5-6; Norwood Aff. ¶¶ 5-6. Others have been working with masks, testing, and social distancing, without imposing an undue burden on ULA. Breland Aff. ¶¶ 3, 5-6; Creger Aff. ¶¶ 3, 5. But instead of exploring these options with Plaintiffs and its other employees,

13

ULA simply denied all exemption requests.  Both for the lack of interactive process and the rejection of the requests, Plaintiffs are therefore likely to succeed on the merits of their claims.

### C.  Plaintiffs Have Also Demonstrated that ULA Is In Violation of Alabama Act 2021-561.

ULA contends that Plaintiffs have failed to show a likelihood of success on the merits of their claim under Alabama Act 2021-561 on the ground that the Alabama law is preempted by federal law because ULA is a "federal government contractor."  That contention lacks merit.

ULA is correct that "Questions regarding whether federal mandates supersede Alabama Act 2021-561 are yet to be determined," Def's Opp. at 15, but the fact that the issue has not yet been determined—the law only went into effect on November 5—says nothing about whether Plaintiffs' claims under the law are likely to succeed.  And ULA is simply wrong in asserting that the "Guidance from the Safer Federal Workforce Task Force ("Task Force") indicates that state laws are preempted."  *Id.*  As ULA itself acknowledges, that Guidance "requires that covered contractor and subcontractor employees receive a COVID-19 vaccination, *except insofar as any such employee is legally entitled to an accommodation.*"  *Id.* at 16 (emphasis added).  Alabama Act 2021-561 provides a state procedure to allow appeals for denials of accommodations to which employees are legally entitled.  Those accommodations are provided by *federal law*—Title VII and the ADA.  And that same federal law specifically envisions state procedures for enforcement. *See* 42 U.S.C.A. § 2000e-5(c) (specifically authorizing state or local enforcement of Title VII discrimination claims); 42 U.S.C. § 12112(a) (applying Title VII procedures to ADA enforcement); *see also* 42 U.S.C.A. § 2000e-7 ("Nothing in this subchapter shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State or political subdivision of a State, other than any such law which purports to require or permit the doing of any act which would be an unlawful employment practice under this subchapter").

14

In short, there is no conflict between, and hence no preemption by, federal law and the federal contractor contracts that require compliance with that law, on the one hand, and Alabama's statutory mechanism for enforcing those same federal laws, on the other.

ULA also suggests, in a footnote, that there is no private right of action under Alabama Law 2021-561. Def. Opp. at 15 n. 4.  Assertions raised only in a footnote, without citation of authority or argument, are likely waived. *See Ferguson v. Allen*, No. 3:09-CV-0138, 2014 WL 3689784, at *58 (N.D. Ala. July 21, 2014); *cf. White Sands Grp., L.L.C. v. PRS II, LLC*, 998 So. 2d 1042, 1058 (Ala. 2008) (Appellate "Rule 28(a)(10) requires that arguments in briefs contain discussions of facts and relevant legal authorities that support the party's position. If they do not, the arguments are waived."); *Taylor v. State*, 157 So. 3d 131, 143 (Ala. Crim. App. 2010) ("Recitation of allegations without citation to any legal authority and without adequate recitation of the facts relied upon has been deemed a waiver of the arguments listed," quoting *Scott v. State*, 262 So.3d 1239, 1263 (Ala. Crim. App. 2010)).

But even if not waived, Alabama Act 2021-561 contains mandates on employers that clearly operate for the benefit of individual employees.  Subsection (1)(e) requires employers to notify employees they have a right to file an appeal of any denial of their religious or medical accommodation requests; subsection (1)(g)(2) authorizes employees whose denial is upheld by an administrative law judge to "file an appeal with a court of competent jurisdiction"; subsection (1)(h)(1) provides that "An employer who has denied an employee's request may not terminate the employee on the basis of failing to receive a vaccination for a period of 7 calendar days after the denial was issued by the employer, or if an appeal was made, until the administrative law judge or the court issues a final ruling in the employer's favor"; and subsection (1)(h)(2) bars employers from reducing such an employee's rate of compensation while his appeals are pending. The Alabama Supreme Court has declined to find a private cause of action in statutes that create

duties owed to the general public rather than specific individuals, *see*, *e.g.*, *C.B. v. Bobo*, 659 So. 2d 98, 102 (Ala. 1995), but it has found a private right of action in statutes that create a duty for the benefit of particular individuals, as this does, *Gowens v. Tys. S. ex rel. Davis*, 948 So. 2d 513, 530 (Ala. 2006).  *See also Thomas Learning Ctr., Inc. v. McGuirk*, 766 So. 2d 161, 171 (Ala. Civ. App. 1998) (finding no private cause of action because "The licensure statutes were not enacted for the benefit of the Thomases *as distinguished from the public generally*"); *Vandenberg v. Aramark Educ. Servs., Inc.*, 81 So. 3d 326, 342 (Ala. 2011) (rejecting students' argument that "the general rule [as described in 1A *Corpus Juris Secundum*, *Actions* § 57] is that when a statute imposes a duty for the benefit or protection of particular individuals or classes of individuals, a violation of that duty gives a right of action to any person for whose benefit or protection the statute was enacted," not for disagreement with the general rule, but because the statute in question "was not enacted for the direct benefit of students").

To be sure, Act 2021-561 appears, on first blush, to be internally contradictory on this score. In addition to the above specific mandates on employers operating for the benefit of particular individuals, for which a private cause of action would be implied under *Gowens*, subsection (1)(j) provides that "[t]his section does not create or imply a private cause of action for employees who are terminated after refusing to receive a vaccination mandated by their employer."  In Plaintiffs' view, that internal contradiction evaporates if subjection (1)(j) is read *in pari materia* with the immediately preceding subsection (1)(i), which provides: "Nothing in this section shall be construed to alter or amend the ability of an employer to terminate an employee for reasons other than the employee's COVID-19 vaccination status."  Read in that context, subsection (1)(j) simply means that the section does not create a private cause of action for those who are terminated for reasons other than refusal to receive a vaccine, leaving in place the express resort to administrative law judges and courts of competent jurisdiction for enforcement of the

Act's mandates contained elsewhere in the statute.

**IV.  ULA's Focus on Harm From the Pandemic Begs the Question About Whether Plaintiffs' Religious and Medical Requests Could Be Accommodated.**

ULA's contention that the balance of harms, as well as the public interest, tilts heavily in favor of ULA's vaccine mandate also begs the precise questions at issue here, whether Plaintiffs' requests for religious and/or medical exemptions could have been accommodated without undermining ULA's (and the public's) interest in health and safety.  This is the very kind of inquiry that an "interactive process" is supposed to explore, but ULA refused to engage in any discussions on that score.  One obvious example will suffice to show that Plaintiffs are likely to succeed on the merits here.  Plaintiffs Eastman and Norwood have been working (and can easily continue to work) remotely, given their job duties.  ULA makes no effort to show that such an accommodation would "create substantial harm to the public, including Defendant's employees and visitors."  Def. Opp. at 17.  And ULA likewise makes no effort to show that other accommodations (masks, social distancing, temperature checks, etc.), utilizing procedures that have been in place since the pandemic began, would similarly create such a substantial harm.  Instead, it merely repeats the litany of irrelevant cases already discussed above, none of which dealt with the issue of accommodations.

Although not a case addressing the COVID pandemic, the Ninth Circuit's ADA decision in *Lockett v. Catalina Channel Exp., Inc.,* 496 F.3d 1061 (9th Cir.2007), is instructive.  There, the operator of the Catalina Island ferry excluded a blind passenger traveling with a service dog from its first class lounge, because other passengers had indicated they were allergic to animal dander.  The Court upheld the exclusion of the blind passenger and her dog, but "hasten[ed] to note" that its decision was limited to a one-time determination while the ferry boat company investigated the conflicts between the two medical concerns.  "[I]t is clear that ultimately the entity asserting a "direct threat" as a basis for excluding an individual bears a heavy burden of demonstrating that

17

the individual poses a significant risk to the health and safety of others," the Court added.  *Id.* at

1066 (citing *Bragdon v. Abbott*, 524 U.S. 624, 649-50 (1998)).  For that, the Court relied on

regulations implementing the ADA, and particularly 28 C.F.R. § 36.208(c), which provides that,

"[i]n determining whether an individual poses a direct threat to the health or safety of others, a

public accommodation must make an individualized assessment, based on reasonable judgment

that relies on current medical knowledge or on the best available objective evidence, to ascertain:

the nature, duration, and severity of the risk; the probability that the potential injury will actually

occur; and whether reasonable modifications of policies, practices, or procedures will mitigate the

risk."  Here, ULA has made no individualized assessment, no effort to ascertain the nature,

duration, or severity of any risk that Plaintiffs might pose, no assessment of the probability, and

no interactive discussion about whether reasonable accommodations could be made to mitigate

any risk.

In addition, multiple courts have found that protecting religious liberty is in the public

interest, even in the midst of trying circumstances. *See, e.g.*, *Smith v. Ala. Dep't of Corr.*, 844 F.

App'x 286, 294 (11th Cir. 2021) (holding that nobody has an interest in breaking federal law [such

as Title VII in the present case] and therefore the public interest weighed in favor of protecting

religious freedom); *Dahl, supra* (holding that protecting religious liberty was in the public interest

in granting an injunction); *Northshore*, 2021 WL 5119751 at *1-2 ("although there is a great

public interest in protecting the public from COVID, there is also a public interest in protecting

religious freedom and free exercise rights").

**V.    Plaintiffs Did Not Delay; the Case Was Filed Just Days After Appeals Were Denied.**

Finally, ULA contends that injunctive relief should be denied because of "Plaintiffs' Delay

in Pursuing this Act," noting that "Plaintiffs knew about Defendant's vaccination requirement in

August of 2021."  Def. Opp. at 19.  With all due respect, that's rich.  As Plaintiffs' noted in their

complaint, ULA's vaccine mandate required employees to obtain a vaccine by the stated deadline (which was changed twice since August) or *"obtai[n] an approved exemption as an accommodation."*  Complaint ¶ 25 (emphasis added).  ULA also stated at the time "that employees could request accommodations for both religious and health reasons, and specifically advised that having a serology test confirming antibodies from a prior COVID infection would suffice for a medical exemption."  *Id.* ¶ 29; *see also* ¶ 7 (noting that "ULA's President and CEO had announced that a serology test demonstrating antibodies would qualify for a medical exemption").  Plaintiffs submitted their requests for accommodation by ULA's self-imposed deadline of October 1 in good faith reliance on those representations.  As Plaintiff Norwood noted, ULA led them on to thinking they would get accommodations during the entire process.  Norwood Aff. ¶ 24.  When the requests for accommodation were all denied, Plaintiffs filed appeals of those denials.  The first round of appeals were denied on November 4, just a week before this case was filed. Eastman Aff. ¶ 17; Norwood Aff. ¶ 17.  Others, being processed through the union grievance process, have not yet been denied.  Breland Aff. ¶ 16; Creger Aff. ¶ 14; Maine Aff. ¶ 16.  Plaintiff Eastman also filed a renewed request for religious accommodation based on the fact that because a much smaller number of ULA employees were still seeking exemptions, ULA's initial claim that it had received too many religious exemption requests was no longer valid.  Eastman Aff. ¶ 18 and Ex. H.  That renewed request was denied on November 8.  Eastman then submitted a renewed request pursuant to newly enacted Alabama Act 2021-561 on November 10, to which ULA never responded.  This suit was filed two days later—hardly the delay of "a few months" that the Eleventh Circuit described as, "though not necessarily fatal—militates against a finding of irreparable harm."  *Wreal, LLC v. Amazon.com*, 840 F.3d 1244, 1248 (11th Cir. 2016).

## VI.   CONCLUSION

Plaintiffs here seek only a preliminary injunction to "preserve the relative positions of the parties until a trial on the merits can be held." *University of Texas v. Camenisch,* 451 U.S. 390, 395 (1981).  For the reasons set out above and previously, they meet the requirements for a preliminary injunction under Rule 65.  Their request should therefore be granted.

November 19, 2021                                            Respectfully submitted,

*/s/ Matthew J. Clark*
Matthew J. Clark
Alabama Bar No. 3788-Q61x
matt@alabamalawandliberty.org
ALABAMA CENTER FOR LAW & LIBERTY
2213 Morris Avenue
Birmingham, AL 35203
Telephone: (256) 510-1828

*/s/ John C. Eastman*
John C. Eastman*
Cal. Bar No. 193726
jeastman@ccg1776.com
CONSTITUTIONAL COUNSEL GROUP
174 W. Lincoln Ave, #620
Anaheim, CA  92805
Telephone: (909) 257-3869
Facsimile: (714) 844-4817

* *Pro hac vice* motion forthcoming

*Counsel for Plaintiffs and the Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

A true and correct copy of the foregoing has been served via the Court's electronic filing system upon all counsel of record.

<u>/s/ Matthew J. Clark</u>
Matthew J. Clark

Counsel for Plaintiffs and the Proposed Class