FILED

2021 Nov-30  AM 09:52
U.S. DISTRICT COURT
N.D. OF ALABAMA



## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **HUNTER CREGER, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | Civil Action Number |
| **v.** | ) | **5:21-cv-01508-AKK** |
| | ) | |
| **UNITED LAUNCH ALLIANCE** | ) | |
| **LLC,** | ) | |
| | ) | |
| **Defendant.** | | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Hunter Creger, Benjamin Eastman, Sherrie Maine, Lance Norwood, and Zachary Breland filed this action seeking relief from United Launch Alliance's COVID-19 vaccination policy.  Doc. 1.  United Launch, an aerospace engineering firm, recently implemented a policy requiring employees to either get vaccinated against COVID-19 or obtain a medical or religious exemption.  *Id*. at 6, 8-9. Employees who refuse vaccination and are not granted an exemption are considered to have "voluntarily resigned."  *Id*. at 8.  The plaintiffs, all unvaccinated current or former employees at United Launch's Decatur, Alabama facility, requested exemptions.  *Id*. at 3-6.  After United Launch denied their requests, the plaintiffs filed this action "on behalf of themselves and all others similarly situated," alleging that the implementation of the COVID-19 vaccination policy and the denial of their

exemption requests violate Title VII, the Americans with Disabilities Act, and Alabama law.  *Id.* at 1, 3-6, 15-17.  The plaintiffs seek: (1) certification of a class under Federal Rule of Civil Procedure 23; (2) a temporary restraining order and preliminary injunction preventing United Launch from effectuating its vaccine policy; (3) a permanent injunction doing the same; and (4) various monetary damages.  *Id.* at 18-19.

Now before the court is the plaintiffs' motion for a temporary restraining order and preliminary injunction, doc. 2, in which they argue that unless the court "temporarily enjoins [United Launch's] mandate for all employees with religious or medical reasons for seeking an accommodation, plaintiffs and hundreds of others similarly situated will suffer harms that neither the Equal Opportunity Employment Commission, the Alabama Department of Labor, nor this court can remedy," doc. 3 at 2.  The plaintiffs asked the court to rule on their motion the same day they filed it.  *See* docs. 7, 8.  The court declined, finding that the plaintiffs "had not, at this juncture, demonstrated an irreparable injury requiring immediate injunctive relief," and instead allowed the parties to fully brief the motion.  Doc. 9 at 2-3.  Now, with the benefit of the parties' briefs, docs. 10 and 12, and for reasons stated below, the court finds that the plaintiffs have failed to meet their burden as to any of the four requirements for preliminary injunctive relief.  Accordingly, their motion is due to be denied.

## I.

COVID-19 has killed well over three-quarters of a million people in the United States. *COVID Data Tracker*, Centers for Disease Control and Prevention (last visited Nov. 30, 2021), https://covid.cdc.gov/covid-data-tracker/#datatracker-home. Over 16,000 of these deaths have occurred in Alabama. *Coronavirus Resource Center*, Johns Hopkins University (last visited Nov. 30, 2021), https://coronavirus.jhu.edu/region/us/alabama. In Morgan County, where United Launch's Decatur facility is located, the current level of COVID-19 transmission in the community is "substantial." *Tracking COVID-19 in Alabama*, Alabama Political Reporter (last updated Nov. 29, 2021), https://www.alreporter.com/mapping-coronavirus-in-alabama.

## A.

As the coronavirus started to spread in early 2020, United Launch began to combat the pandemic by "implementing certain mitigation procedures for its workforce, including working remotely and requiring on-site employees to wear masks and maintain distance from others." Doc. 3 at 2. As a continuation of these mitigation measures, United Launch announced a vaccination policy shortly after the Food and Drug Administration issued full approval for Pfizer's coronavirus vaccine. *Id.* at 3-4. This policy required all employees to receive at least one dose of a COVID-19 vaccine by October 29, 2021. Doc. 1 at 9. Employees could request

a religious or medical exemption. *Id.* at 9-10.  Under the policy, periodic testing or other preventative measures are not available as alternatives to vaccination, and if an employee is not granted an exemption, they are "deemed to have voluntarily resigned their position" if they still refuse to get vaccinated *Id.* at 9.

The plaintiffs each requested medical and/or religious exemptions. *Id.* at 2-6. Specifically, all five named plaintiffs objected on religious grounds because their "religious beliefs bar [them] from taking a vaccine that was manufactured and/or tested on cell lines derived from stem cells of aborted fetuses, as all of the currently available COVID-19 vaccines are." *Id.*  United Launch denied Maine's religious accommodation request as untimely, *id.* at 4, and denied the other four plaintiffs' requests based on "an undue hardship," *see* docs. 3-1 at 15-16; 3-2 at 12-13; 3-3 at 45-46; 3-5 at 13-14.  The factors that contributed to United Launch's denial of these requests included:

> the high volume of requests to accommodate that qualified under the sincerely held belief prong of the analysis; the need to ensure a healthy and safe workplace; the time, cost, and administration burden associated with weekly testing; potential issues with the availability of testing; [United Launch's] requirements as a federal government contractor, including [National Reconnaissance Office] requirements to staff contracts with vaccinated workers; the need to comply with strict contract requirements, including launch schedules, and the potential financial risks of failure to satisfy such requirements; the nature of our workplace and business, including the need for on-site work; the need for employees to interact with others, travel, and access customer facilities, including federal facilities with strict access requirements; the number of prior COVID cases and quarantines at [United Launch], including multiple hospitalizations and deaths; and the presence of

> continued active COVID-19 cases and quarantines at [United Launch]
> despite prior safety measures.

Doc. 3-1 at 15-16.  *See also* docs. 3-2 at 12-13; 3-3 at 45-46; 3-5 at 13-14.

In addition to a religious exemption, two of the plaintiffs also sought medical exemptions.  In particular, Breland requested a medical accommodation on the grounds that he "suffers from Generalized Anxiety Disorder well preceding the COVID pandemic and the pandemic greatly aggravates this condition and limits his ability to take vaccination."  Doc. 3-1 at 10-12.  United Launch denied Breland's request "based on the CDC 'Interim Clinical Considerations for Use of COVID-19 Vaccines.'"  *Id.* at 14.  Maine sought a medical exemption "based on her having natural immunity with antibodies on recent lab work."  Doc. 3-4 at 5-7.  United Launch denied this request due to "the non-acceptance of serology levels as substitution for COVID-19 vaccinations by our federal government customer."  *Id.* at 10.

## B.

Each plaintiff appealed through their union grievance process and filed complaints with the EEOC.  Doc. 1 at 2-6.  United Launch suspended or placed each on unpaid administrative leave pending the resolution of their appeals.  *Id.*  United Launch denied Eastman and Norwood's appeals on November 4, and gave each three days to either receive their first dose of a vaccine or face separation.  *Id.* at 3, 5.  Creger and Eastman, on November 9 and 10 respectively, also filed renewed

religious accommodation requests after the passage of Alabama Act 2021-561.  *Id.* at 2-3.

The plaintiffs then filed this putative class action, alleging that United Launch's implementation of its vaccination policy violates federal and state law.  *See id.*  Specifically, the plaintiffs claim that by denying their exemption requests, United Launch violated Title VII by discriminating against them because of their religious beliefs, *id.* at 15-16, and violated the ADA by discriminating against Maine and Breland "because of their medical conditions," *id.* at 16.  The plaintiffs also claim that United Launch violated recently-passed Alabama Act 2021-561 by (1) failing to "liberally construe the employee's eligibility for an exemption in favor of the employee," and (2) terminating or placing the plaintiffs on unpaid leave prior to the resolution of their appeals.  *Id.* at 17, 22-29.

## C.

In the instant motion, the plaintiffs request a temporary restraining order and preliminary injunction "enjoining [United Launch] from enforcing its COVID-19 vaccine mandate for all employees who have requested or will request an accommodation from the mandate until [United Launch] has granted reasonable accommodations as required by federal and Alabama law."  Doc. 2 at 1. Specifically, the plaintiffs ask the court to temporarily enjoin United Launch from: "(1) terminating any employee for failing to receive a COVID-19 vaccine if that

employee has requested an accommodation for religious or medical reasons; (2) placing any employee on unpaid leave as a form of accommodation from the COVID-19 vaccine mandate; and (3) denying as untimely any request for religious or medical accommodation from the COVID-19 vaccine mandate." *Id*. at 2.  And, in the event that an employee is discharged for failing to comply with the policy, the plaintiffs ask the court "to use its supplemental jurisdiction to order [United Launch] to continue paying them under Alabama Act 2021-561 § 1(h)." *Id.*

## II.

A preliminary injunction is an "extraordinary remedy," *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008), and the grant of a preliminary injunction is "the exception rather than the rule." *United States v. Lambert*, 695 F.2d 536, 539 (11th Cir. 1983).[1]  To obtain this extraordinary relief, the applicant must show that: "(1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Swain v. Junior*, 961 F.3d 1276, 1285 (11th Cir. 2020) (quoting *Jones v. Governor of Fla.*, 950 F.3d 795, 806 (11th Cir. 2020)).  The movant bears the burden of persuasion on

---

[1] The standards for a preliminary injunction and a temporary restraining order are identical. *Windsor v. United States*, 379 F. App'x 912, 916–17 (11th Cir. 2010).

each of these factors, *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc), and is only entitled to a preliminary injunction upon a clear showing that it is entitled to such relief, *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

### III.

The court turns now to these four factors to ascertain whether the plaintiffs are correct that they have met their burden for each and that an injunction is necessary to ensure that "the EEOC and this court will be able to order meaningful relief later."  Doc. 3 at 25.[2]

### A.

The first factor requires a movant to make a clear showing that their claims have a substantial likelihood of success on the merits.  *Mazurek*, 520 U.S. at 972; *Swain*, 961 F.3d at 1285.  The plaintiffs have not met this burden for any of their three claims.

---

[2] Title VII and the ADA require plaintiffs to exhaust EEOC administrative remedies before filing suit.  *See Batson v. Salvation Army*, 897 F.3d 1320, 1327 (11th Cir. 2018); *H&R Block E. Enterprises, Inc. v. Morris*, 606 F.3d 1285, 1295 (11th Cir. 2010).  The plaintiffs' EEOC claims are still pending, but they argue that an injunction is necessary now "to preserve the status quo by allowing the EEOC to continue reviewing [p]laintiffs' administrative charges regarding [United Launch's] unlawful conduct."  Doc. 3 at 25.  In support, they cite *Drew v. Liberty Mut. Ins. Co.*, 480 F.2d 69 (5th Cir. 1973), in which the court allowed a plaintiff to bypass the administrative exhaustion requirement where she showed irreparable injury and a likelihood of ultimate success, *id.* at 71.  The plaintiffs claim to make both of these showings, doc. 3 at 7, so the court will consider the merits of their motion despite their failure to exhaust.

**1.**

Title VII prohibits an employer from discriminating against an employee on the basis of religion, which "includes all aspects of religious observance and practice, as well as belief." 42 U.S.C. §§ 2000e(j), 2000e-2. To succeed on a religious discrimination claim, a plaintiff must first prove that: "(1) he had a bona fide religious belief that conflicted with an employment requirement; (2) he informed his employer of his belief; and (3) he was discharged for failing to comply with the conflicting employment requirement." *Telfair v. Fed. Exp. Corp.*, 567 F. App'x 681, 683 (11th Cir. 2014) (citing *Walden v. Ctrs. for Disease Control & Prevention*, 669 F.3d 1277, 1293 (11th Cir. 2012)). If a plaintiff proves these three elements, "the burden shifts to the employer to establish that it provided the employee with a reasonable accommodation or that an accommodation would cause an undue hardship." *Dalberiste v. GLE Assocs., Inc.*, 814 F. App'x 495, 497–98 (11th Cir. 2020) (citing *Beadle v. Hillsborough Cty. Sheriff's Dep't*, 29 F.3d 589, 591-93 (11th Cir. 1994)). The undue hardship defense, explicit in Title VII itself,[3] refers to "any act requiring an employer to bear more than a 'de minimis cost' in

---

[3] *See* 42 U.S.C. § 2000e(j) ("The term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business."); *see also Walden*, 669 F.3d at 1293 (quoting *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 75 (1977)) (holding that under Title VII, "[a]n employer has a 'statutory obligation to make reasonable accommodation for the religious observances of its employees, short of incurring an undue hardship.'").

accommodating an employee's religious beliefs." *Beadle v. City of Tampa*, 42 F.3d 633, 636 (11th Cir. 1995) (quoting *Trans World Airlines*, 432 U.S. at 84 n.15).  A de minimis cost includes "not only monetary concerns, but also the employer's burden in conducting its business."  *Id.*

In arguing that they are likely to succeed on the merits, the plaintiffs assert that an employer "must offer a 'reasonable accommodation,' which then 'triggers a duty on the part of the employee to make a good faith attempt to satisfy his needs through the offered accommodation.'"  Doc. 3 at 11 (quoting *Telfair*, 567 F. App'x at 684).  Allegedly, United Launch thus violated Title VII by failing to offer any reasonable accommodations.  *Id.* at 11-14.  But this framing misrepresents both the explicit statutory text and the authority on which the plaintiffs rely.  Even if the plaintiffs show that United Launch discharged them for failing to comply with the vaccine policy due to a bona fide religious belief, this only means they have established a prima facie case.  At that point, "the burden shifts to the defendant to show it is unable to accommodate reasonably the plaintiff's religious observance or practice without undue hardship to the defendant."  *Telfair*, 567 F. App'x at 683.  In other words, United Launch is only required to have offered reasonable accommodations if such accommodations would not impose an undue burden on its business.  *See Dalberiste*, 814 F. App'x at 497–98.  In denying the exemption requests, United Launch noted at least ten different reasons why accommodating

these requests would have burdened its business and imposed a more than de minimis cost, including the added cost and administrative burden of providing for weekly testing in lieu of vaccination, strict contract requirements that require staffing with vaccinated employees, the financial risks of failing to satisfy these contract requirements, and multiple prior hospitalizations and deaths of United Launch employees due to COVID-19.  *See* docs. 3-1 at 15-16; 3-2 at 12-13; 3-3 at 45-46; 3-5 at 13-14.  These reasons are enough to satisfy United Launch's burden.

The plaintiffs contend that they "are not asking for an accommodation that places a hardship" on United Launch and that "there are a host of reasonable accommodations that are not unduly burdensome," such as working remotely, mask wearing, or periodic testing.  Doc. 3 at 14.  Under Title VII, however, "an employer need not give an employee a choice among several accommodations, nor is the employer required to provide an employee with the employee's preferred accommodation or show undue hardship resulting from alternative accommodations proposed by the employee."  *Telfair*, 567 F. App'x at 683.  The plaintiffs argue further that United Launch's uniform denial of the requests shows a failure to meaningfully engage with the plaintiffs in determining reasonable accommodations.  Doc. 3 at 12-14.  But for a federal government contractor whose contracts require staffing with vaccinated workers, accommodating *any* employee's request to remain unvaccinated may certainly burden the employer in conducting its business and

11

result in a more than de minimis cost.  *See Dalberiste*, 814 F. App'x at 497–98; *Beadle*, 42 F.3d at 636.  And regardless of whether United Launch can eventually prove that accommodating the plaintiffs' requests would have actually caused an undue hardship, on a motion for a preliminary injunction, the movant bears the burden of proof.  *Swain*, 961 F.3d at 1285.  The plaintiffs have not shown that they can overcome United Launch's undue hardship defense, and they have therefore failed, at this stage, to prove a substantial likelihood of success on the merits of their Title VII claim.

## 2.

The Americans with Disabilities Act prohibits employers from discriminating against employees because of a disability.  42 U.S.C. § 12112(a).  To establish a prima facie claim, a plaintiff must show: "(1) he is disabled; (2) he is a qualified individual; and (3) he was subjected to unlawful discrimination because of his disability."  *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255–56 (11th Cir. 2007) (citing *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000)).  An individual is "qualified" under the ADA if he, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).  "If the individual is unable to perform an essential function of his job, even with an accommodation, he is, by definition, not a qualified individual and, therefore, not covered under the ADA."

*D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1229 (11th Cir. 2005) (internal citation omitted).

Moreover, "the burden of identifying an accommodation that would allow a qualified employee to perform the essential functions of her job rests with that employee, as does the ultimate burden of persuasion with respect to showing that such accommodation is reasonable." *Earl*, 207 F.3d at 1367 (citing *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1286 (11th Cir. 1997)). And "[a]n accommodation is reasonable, and thus required under the ADA, only if it allows the employee to perform the essential functions of the job." *Id*. (citing *LaChance v. Duffy's Draft House, Inc.*, 146 F.3d 832, 835 (11th Cir. 1998)). Thus, where an employer can show that a requested accommodation would either (1) not allow an employee to perform the essential functions of their job or (2) "would impose an undue hardship on the operation of the business" by resulting in "significant difficulty or expense," the ADA does not require the employer to make the accommodation. 42 U.S.C. §§ 12111(10), 12112(b)(5); *Earl*, 207 F.3d at 1365, 1367.

Accepting as true that Breland and Maine are "disabled" under the meaning of the ADA, the plaintiffs still have not shown a substantial likelihood of success on the merits of their claim. First, if United Launch's government contracts mandate vaccinated workers, an employee unable to get vaccinated due to a disability would

be disqualified from working on such contracts. Assuming that government contracts make up a significant portion of United Launch's business, an unvaccinated employee would likely be "unable to perform an essential function of his job" – namely, working on such contracts – and would therefore not be a qualified individual covered by the ADA. *D'Angelo*, 422 F.3d at 1229.

But even if Breland, Maine, and similarly-situated employees are qualified individuals, and even assuming the plaintiffs have shown that the accommodations suggested in their briefing – mask usage, remote work, and periodic testing – are reasonable, such a showing does not automatically render their ADA claim meritorious. As outlined above, United Launch has plausibly claimed that accommodating the plaintiffs' requests for religious exemptions would result in an increased financial burden, disruptions in labor, the potential loss of government contracts, and heightened health risks to employees and customers. *See* docs. 3-1 at 15-16; 3-2 at 12-13; 3-3 at 45-46; 3-5 at 13-14. These burdens, which also apply in the ADA context, suggest that the requested accommodations would impose a "significant difficulty or expense" and thus "an undue hardship on the operation of [United Launch's] business." 42 U.S.C. §§ 12111(10), 12112(b)(5).

The plaintiffs insist that despite any burden to United Launch, it was still required to engage in an interactive process to determine possible accommodations for Breland and Maine, and they contend that United Launch failed to engage in this

14

dialogue.  Doc. 3 at 14-17.  But the plaintiffs' exhibits undermine this contention.

Under the ADA, an employer is not liable for failure to accommodate "if the

employee is responsible for the breakdown of the interactive process . . . , [and] the

employer's duty to provide a reasonable accommodation is not triggered unless a

specific demand for an accommodation has been made by an employee."  *D'Onofrio*

*v. Costco Wholesale Corp.*, 964 F.3d 1014, 1022 (11th Cir. 2020) (internal citation

omitted).  On United Launch's medical accommodation request form, question six

asks, "Are there any reasonable accommodations of which you are aware that would

enable the unvaccinated employee to perform their job duties on-site without posing

a direct threat to the health of safety of the employee or others?"  Doc. 3-1 at 11.  In

answering this question, Breland's medical provider wrote "defer to company

policy," *id*, and Maine's provider left the question blank, doc. 3-4 at 6.  Given these

plaintiffs' failure to request a specific accommodation, United Launch had no duty

to engage in an interactive process, and the plaintiffs' claim to the contrary

necessarily fails.  *See D'Onofrio*, 964 F.3d at 1022.

In sum, the plaintiffs have not shown, at this juncture, that they can overcome

United Launch's undue hardship defense, and they have thus failed to show that their

ADA claim is substantially likely to succeed on the merits.

**3.**

The plaintiffs' state law claim is based on newly-passed Alabama Act 2021-561, also known as SB9.  Under Act 2021-561, employers must "liberally construe the employee's eligibility for an exemption in favor of the employee, consistent with applicable law."  2021 Alabama Senate Bill No. 9,  § 1(d), Alabama 2021 Second Special Session.  Additionally, if an employer denies an exemption request, it (1) "may not terminate the employee on the basis of failing to receive a vaccination for a period of 7 calendar days after the denial was issued by the employer, or if an appeal was made, until the administrative law judge or the court issues a final ruling in the employer's favor," and (2) must continue compensating the employee for the same period of time.  *Id*. at § 1(h).  The plaintiffs argue that United Launch's "placement of employees on unpaid administrative leave, and its termination of others, prior to resolution of any appeals authorized by the Act, is therefore a clear violation."  Doc. 3 at 18.

The plaintiffs overlook, however, that the Act, by its terms, "does not create or imply a private cause of action for employees who are terminated after refusing to receive vaccination mandated by their employer."  2021 Alabama Senate Bill No. 9,  § 1(j).  Instead, for employees who dispute the denial of their exemption request, the Act delegates administration of  their claims to administrative law judges appointed by the Alabama Secretary of Labor.  *Id*. at § 1(g).  Employees may only

16

file a lawsuit if they first are denied relief at the administrative level: "An employee whose denial is upheld by an administrative law judge, within 14 calendar days of the ruling, may file an appeal with a court of competent jurisdiction." *Id*. at § 1(g)(2) Therefore, even if the plaintiffs can show that United Launch violated the Act, they cannot show a substantial likelihood of success on the merits because the Act bars them from bringing this claim in court without first seeking relief from an ALJ.

The plaintiffs ask the court to entirely disregard the clear wording of the statute and to instead imply a private cause of action based on Alabama common law principles of statutory interpretation. *See* doc. 12 at 15-17. The plaintiffs' contention, however, is belied by statutory interpretation rules mandating a text-based approach.[4] Therefore, the court declines the plaintiffs' invitation to engage in a sort of contra-textualism here to create a private cause of action under a statute that explicitly proscribes one.

In their attempt to overcome the private cause of action bar, the plaintiffs also suggest that the court should read the private-cause-of-action disclaimer "*in pari materia* with the immediately preceding subsection (1)(i), which provides: 'Nothing in this section shall be construed to alter or amend the ability of an employer to

---

[4] *See Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*, 138 S. Ct. 883, 893 (2018) (internal citation omitted) ("Our analysis begins with the text of [the statute], and we look to both the language itself and the specific context in which that language is used."); *Craft v. McCoy*, 312 So. 3d 32, 37 (Ala. 2020) (internal citation omitted) ("In determining the meaning of a statute, this Court looks to the plain meaning of the words as written by the legislature.").

terminate an employee for reasons other than the employee's COVID-19 vaccination status.'"  Doc. 12 at 16.  "Read in that context," the plaintiffs argue, "subsection (1)(j) simply means that the section does not create a private cause of action for those who are terminated for reasons other than refusal to receive a vaccine."  *Id.*

This reading of the statute is disingenuous.  Section 1(j) denies a private cause of action to those "terminated *after refusing to receive a vaccination* mandated by their employer," while section 1(i) relates to an employer's right to terminate an employee "for reasons *other than the employee's COVID-19 vaccination status*." 2021 Alabama Senate Bill No. 9,   §§ 1(i), 1(j), Alabama 2021 Second Special Session (emphasis added).  The plaintiffs' suggestion that section 1(j)'s foreclosure of a private cause of action is limited by section 1(i) to employees who are terminated for non-vaccine-related reasons completely ignores the actual wording of the statute. As the Alabama Supreme Court has instructed, "[i]f the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect."  *Ex parte Exxon Mobil Corp.*, 926 So. 2d 303, 309 (Ala. 2005) (internal citation omitted).  Therefore, the court again declines the plaintiffs' invitation to disregard the literal terms of the statute.

To close, the plaintiffs have failed to show that their Alabama state law claim is cognizable, much less that it has a substantial likelihood of success on the merits.

* * * * *

The plaintiffs have failed to meet their burden for the first element of a preliminary injunction as to any of their three claims.  Importantly, a preliminary injunction is "not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites."  *Am. C.L. Union of Fla., Inc. v. Miami-Dade Cty. Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009) (internal citations omitted). "Failure to show any of the four factors is fatal, and the most common failure is not showing a substantial likelihood of success on the merits."  *Id*.  Although the inquiry could stop here as a result of the plaintiffs' failure, for the sake of completeness, the court will briefly discuss the remaining three factors.  For the reasons stated below, the plaintiffs have also failed to meet their burden as to these other factors.

**B.**

In addition to showing a likelihood of success on the merits, plaintiffs seeking a preliminary injunction must also show that they are "likely to suffer irreparable harm in the absence of preliminary relief."  *Winter*, 555 U.S. at 20.  An irreparable injury is one that "cannot be undone through monetary remedies."  *Brown v. Sec'y, U.S. Dep't of Health & Hum. Servs.*, 4 F.4th 1220, 1235 (11th Cir. 2021) (citing *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990)).  As the Supreme Court has noted:

> The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily

> expended in the absence of a stay are not enough. The possibility that
> adequate compensatory or other corrective relief will be available at a
> later date, in the ordinary course of litigation, weighs heavily against a
> claim of irreparable harm.

*Sampson v. Murray*, 415 U.S. 61, 90 (1974) (quoting *Virginia Petroleum Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958)).  Additionally, speculative future injury, or a mere "possibility of irreparable harm," is not sufficient to invoke the "extraordinary remedy" of a preliminary injunction.  *Winter*, 555 U.S. at 22.  And "external factors common to most discharged employees and not attributable to any unusual actions relating to the discharge itself" – such as the loss of income or benefits and the difficulty of finding new employment – "will not support a finding of irreparable injury."  *Sampson*, 415 U.S. at 92 n.68.

The plaintiffs allege a variety of irreparable injuries, all related to the loss of income or benefits.  Eastman may lose his eligibility for a mortgage and miss out on a "seasonal slowdown" of the home-buying market this winter, and, if discharged, would lose health insurance coverage for his pregnant wife.  Docs. 3 at 20; 12 at 4-5, 7.  Creger might be unable to make mortgage payments on land he recently acquired.  Doc. 12 at 5-6.  Maine, if discharged, "will lose the income and medical insurance that she currently uses to pay for her husband's chronic medical conditions," and "her husband will have to delay taking his permanent disability for which he is eligible."  Docs. 3 at 19; 12 at 7.  Norwood has a nine-month-old daughter with "two congenital heart defects that will require consistent medical

20

evaluation," rendering the loss of health insurance coverage "particularly burdensome." Doc. 12 at 7. For Breland, the loss of income and insurance is "very traumatic" for his family. Docs. 3 at 19; 12 at 7. Creger, Eastman, Maine, and Norwood also allege difficulty in finding new employment, with Maine noting that "comparable compensation would be improbable as over the 14-plus years dedicated to [United Launch], I have grown into top compensatory range." Doc. 12 at 9. And all of the plaintiffs argue that losing their paychecks "would put them at risk of violating another religious duty, namely, to provide for one's family." Doc. 3 at 18-19 (citing 1 Timothy 5:8).

The court is sympathetic to these alleged injuries. But each of the potential harms are either not irreparable – i.e. can be remedied through later compensation or other relief – or are based on speculation. If the plaintiffs are ultimately successful, for example, a court or administrative agency of competent jurisdiction could award the plaintiffs all medical costs incurred due to a lack of insurance and related damages due to any emotional distress. Moreover, each of the alleged injuries is contingent on the plaintiffs being unable to secure income and benefits from a new employer. But this inability to find new work is speculative at best, and the Supreme Court has explicitly noted that "difficulties in obtaining other employment" does not support a showing of irreparable harm. *Sampson*, 415 U.S. at 92 n.68.

## C.

As for the third factor, the plaintiffs must show that "the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party." *Swain*, 961 F.3d at 1285. The plaintiffs argue that an injunction will not damage United Launch because it (1) does not require customers and visitors to be vaccinated, (2) does not require the testing of these who have been vaccinated, "even though the CDC has acknowledged that the existing vaccines do not prevent reinfection or transmission," and (3) does not require vaccinated employees to wear masks or social distance. Doc. 3 at 20-21. By contrast, the plaintiffs argue, in addition to the harms mentioned previously, they face the gravely serious injury of being forced to get vaccinated and "forsake their religious beliefs and health." *Id*. at 20.

But United Launch is not forcing employees to get vaccinated against their will. Rather, the vaccine mandate calls only for employees to look for a new job if they decline vaccination. This threat of having to seek new employment, however stressful, does not tip the balance of equities in their favor. And though the plaintiffs certainly may be harmed by losing their jobs at United Launch, this harm does not outweigh the potential harms that United Launch may face if it is forced to retain unvaccinated employees without valid bases for accommodations.

## D.

Finally, the movant must show that their proposed injunction "would not be adverse to the public interest." *Swain*, 961 F.3d at 1285. The plaintiffs argue that an injunction will serve the public interest by "enforcing the guarantees enshrined in the Constitution and federal anti-discrimination law," doc. 3 at 21, and they specifically stress the importance of protecting the right to religious freedom and bodily autonomy. *See id*. at 21-25; doc. 12 at 17-18. But, as outlined above, the plaintiffs' religious liberty is not threatened, nor is their medical freedom of choice. Rather, the plaintiffs are given the option to remain unvaccinated – an option that they have all chosen – and instead seek employment with a company that does not require vaccination. Conversely, there is unquestionably a public interest in allowing companies to promote the safety and welfare of their employees by taking preventative measures against COVID-19,[5] or, here, to retain government contracts and thereby continue to employ a substantial number of employees. Given that the plaintiffs have failed to show a public interest in enjoining United Launch's vaccine requirement, and in light of the presumptive public interest in combatting the virus's spread, the plaintiffs have failed to make a clear showing as to a preliminary injunction's fourth requirement.

---

[5] *See Swain*, 961 F.3d at 1294 (noting that "it doubtlessly advances the public interest to stem the spread of COVID-19").

## IV.

In sum, the plaintiffs have not demonstrated, at this juncture, that they are entitled to preliminary injunctive relief.  Therefore, their motion for a preliminary injunction and temporary restraining order, doc. 2, is **DENIED**.  United Launch's motion for a hearing on the plaintiffs' motion, doc. 6, is also **DENIED** as moot.

**DONE** the 30th day of November, 2021.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE